[No. 82802-4.   En Banc.]
Argued May 3, 2011.   Decided November 21, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. ERIC D. WISE, *Petitioner*.

*Andrew P. Zinner* (of *Nielsen, Broman & Koch PLLC*), for petitioner.

*Michael K. Dorcy, Prosecuting Attorney*, and *Timothy J. Higgs, Deputy*, for respondent.

*Jeffrey E. Ellis* and *Sheryl G. McCloud*, on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*James M. Whisman*, on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 OWENS, J. — A public trial is a core safeguard in our system of justice. Be it through members of the media, victims, the family or friends of a party, or passersby, the

public can keep watch over the administration of justice when the courtroom is open. The open and public judicial process helps assure fair trials. It deters perjury and other misconduct by participants in a trial. It tempers biases and undue partiality. The public nature of trials is a check on the judicial system, which the public entrusts to adjudicate and render decisions of the highest import. It provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities. The right to a public trial is so important, in fact, that its violation is an error deemed structural: the error affects the framework within which the trial proceeds. We cannot lightly abandon the values of a public trial.

¶2 However, it is not an inflexible right. There exists a simple yet significant balancing test for trial courts to apply when considering whether specific circumstances warrant closing part of a trial to the public, set out in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). That process was not followed in this case, and we therefore find a violation of the public trial right. Because the violation constitutes structural error and absence of an objection is not a waiver of the public trial right, prejudice is presumed and a new trial is warranted. We reverse the Court of Appeals.

## FACTS

¶3 Eric D. Wise was charged with second degree burglary and first degree theft for breaking into a minimart in Shelton, Washington, and stealing cash and retail items. A jury found Wise guilty of both counts. He received concurrent sentences of 57 months for burglary and 22 months for theft.

¶4 The only facts relevant to Wise's appeal are those related to the voir dire process used to select the jury for his trial. On June 26, 2007, voir dire began in the open

courtroom. The trial court judge was the first to question the prospective jurors and, at one point, instructed them:

> [I]f there is anything that we're talking about or asking you that is sensitive and you don't want to speak about it in this group setting. Just let us know. I make a list on my notebook and we take those jurors back into chambers so that we can ask those questions more privately.

Suppl. Report of Proceedings at 11-12. The trial judge asked several individual jurors if they felt comfortable answering the court's questions in the courtroom or if they would prefer to go to chambers to answer. *See, e.g., id.* at 12 ("Are you comfortable telling me what [your time conflict] is here or would you like to go to chambers?"); *id.* at 13-20. The prosecuting attorney also emphasized the option for prospective jurors to request private questioning in chambers, stating:

> And, as kind of a caveat to the whole process, as you've already seen, we've taken some people in the back and talked to them privately. If there's anything that any of us ask that hits a hot button for any of you that we may not necessarily know about, by all means just say, would you mind if we talk about that in chambers?

*Id.* at 39-40.

¶5 In total, 10 jurors were privately questioned in the judge's chambers during voir dire. The record reflects that the trial judge, the State, and defense counsel were present in chambers for the questioning. Two of the 10 jurors requested private questioning. The other 8 were called into chambers by the trial court through a process that, while not entirely clear from the record, seems related to particular answers of those prospective jurors to questions by the court. The subjects discussed during the private questioning included personal health matters, relationships with witnesses or other law enforcement officers, and criminal history. Of the 10 jurors who were privately questioned in chambers, 6 were excused for cause. The questioning in

8

chambers was recorded and transcribed just like the portion of voir dire done in the open courtroom.

¶6 Before moving voir dire into chambers, the trial court did not make reference to the defendant's right to a public trial, consider alternatives to closure, or address the other *Bone-Club* factors[1] on the record. The record does not reflect whether any members of the public were present in the courtroom besides the venire panel. Neither the State nor the defense objected to conducting a portion of voir dire questioning in the judge's chambers.

¶7 Wise appealed his conviction, challenging only whether his right to a public trial was violated when the trial court conducted part of voir dire in chambers, rather than in the open courtroom, without engaging in a *Bone-Club* analysis. A divided Court of Appeals affirmed his conviction. *State v. Wise*, 148 Wn. App. 425, 200 P.3d 266 (2009). Wise sought review by this court, which we granted. *State v. Wise*, 170 Wn.2d 1009, 236 P.3d 207 (2010).

ISSUE

¶8 Did the trial court violate Wise's right to a public trial by conducting voir dire in chambers without analyzing the need for a closure or considering alternatives on the record?

---

[1] Under *Bone-Club*, a trial court must consider the following criteria, on the record, in order to close criminal trial proceedings to the public:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

128 Wn.2d at 258-61 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

## ANALYSIS

*Standard of Review*

██ ██ ¶9 "Whether a criminal accused's constitutional public trial right has been violated is a question of law, subject to de novo review on direct appeal." *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006). Such a claim may be raised for the first time on appeal. *See State v. Brightman*, 155 Wn.2d 506, 514-15, 122 P.3d 150 (2005).

*Constitutional Right to a Public Trial*

██ ¶10 Our state and federal constitutions both provide that a defendant has a right to a public trial. WASH. CONST. art. I, § 22 ("[T]he accused shall have the right . . . to have a speedy public trial."); U.S. CONST. amend. VI. The right of a public trial is also vested more broadly with the public. WASH. CONST. art. I, § 10 ("Justice in all cases shall be administered openly."); U.S. CONST. amend. I. This court has not considered whether the public trial rights under the state and federal constitutions are coequal. *See Bone-Club*, 128 Wn.2d at 260 ("The Washington Constitution provides *at minimum* the same protection of a defendant's fair trial rights as the Sixth Amendment." (emphasis added)). This case does not require us to reach that question.[2]

██ ¶11 The right to public trial is not absolute. *Id.* at 259. Courts have recognized that while openness is a hallmark of our judicial process, there are other rights and considerations that must sometimes be served by limiting public access to a trial. *Waller v. Georgia*, 467 U.S. 39, 45, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (noting "the defendant's right to a fair trial or the government's interest

---

[2] We briefly note that article I, section 10 of our constitution has no exact parallel in the federal constitution. It states in full, and in clear terms, that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." WASH. CONST. art. I, § 10 (emphasis added).

in inhibiting disclosure of sensitive information" and "privacy of persons not before the court"); *see, e.g., State v. Momah,* 167 Wn.2d 140, 152, 217 P.3d 321 (2009) (noting the right to an impartial jury), *cert. denied,* 131 S. Ct. 160 (2010); *Federated Publ'ns, Inc. v. Kurtz,* 94 Wn.2d 51, 55-56, 615 P.2d 440 (1980) (noting that pretrial publicity of a suppression hearing may prejudice a defendant's right to a fair trial).[3] To balance the public trial right and other competing rights and interests, this court and the United States Supreme Court have developed a specific analytic framework. *Waller,* 467 U.S. at 48; *Bone-Club,* 128 Wn.2d at 258-59. In *Bone-Club,* this court enumerated five criteria that a trial court must consider on the record in order to close trial proceedings to the public. 128 Wn.2d at 258-59. *Bone-Club* requires that trial courts at least: name the right that a defendant and the public will lose by moving proceedings into a private room; name the compelling interest that motivates closure; weigh these competing rights and interests on the record; provide the opportunity for objection; and consider alternatives to closure, opting for the least restrictive. *Id.; cf. Waller,* 467 U.S. at 48 ("[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.").

¶12 In *Presley v. Georgia,* 558 U.S. 209, 215-16, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010), the United States Supreme Court made clear that a trial court must consider alternatives to closure. The Court held that "even assuming, *arguendo,* that the trial court had an overriding interest in closing *voir dire,* it was still incumbent upon it to consider

---

[3] The Court of Appeals decision discusses the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936. *Wise,* 148 Wn. App. at 443-44. Generally, juror privacy is an interest that a trial court may consider when determining whether to close part of a trial, though it must be weighed against the defendant's and public's interests in an open trial.

all reasonable alternatives to closure." *Id.* at 216. The consideration of alternatives is a necessary part of the *Bone-Club* factors that requires that trial courts choose the least restrictive means of closure. 128 Wn.2d at 259-60.

¶13 Though a trial court may close part of a trial upon a rigorous analysis, "protection of this basic constitutional right [to a public trial] clearly calls for a trial court to resist a closure motion except under the most unusual circumstances." *Id.* at 259; *accord Waller*, 467 U.S. at 45. We typically would never reach the complicated questions presented in Wise's case where a trial court conducts a *Bone-Club* analysis on the record and concludes that a closure is warranted. This is because absent an abuse of discretion, we would be assured that the foundational principle of an open justice system is preserved.

*Private Questioning of Prospective Jurors in Chambers During Voir Dire Is a Closure that Requires Consideration of the* Bone-Club *Criteria*

¶14 The public trial right applies to jury selection. *Presley*, 558 U.S. at 213; *Brightman*, 155 Wn.2d at 515. " '[T]he process of juror selection' . . . 'is itself a matter of importance, not simply to the adversaries but to the criminal justice system.' " *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004) (first alteration in original) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)). This court recently held that the public trial right in voir dire proceedings extends to the questioning of individual prospective jurors. *Momah*, 167 Wn.2d at 151-52; *State v. Strode*, 167 Wn.2d 222, 227, 232, 217 P.3d 310 (2009). "The trial judge's decision to allow this questioning of prospective jurors in chambers was a courtroom closure and a denial of the right to a public trial." *Strode*, 167 Wn.2d at 227 (Alexander, C.J., plurality opinion); *see id.* at 232 n.6 (Fairhurst, J., concurring) ("[A] de facto closure occurred [in *Momah*] when jurors were individually questioned outside

12

the courtroom in a room not ordinarily accessed by the public with the door closed."); *Momah*, 167 Wn.2d at 146, 151 (finding that by conducting individual questioning of prospective jurors "the trial judge closed the courtroom").

¶15 Just as in *Momah* and *Strode*, there was a closure of the trial in Wise's case when the trial court questioned prospective jurors in chambers.[4] The questioning occurred in a room that is ordinarily not accessible to the public. *Strode*, 167 Wn.2d at 232 n.6 (Fairhurst, J., concurring).

¶16 A trial court is required to consider the *Bone-Club* factors *before* closing a trial proceeding that should be public. *Easterling*, 157 Wn.2d at 174-75; *Bone-Club*, 128 Wn.2d at 261; *see Presley*, 558 U.S. at 214 ("[T]rial courts are required to consider alternatives to closure even when they are not offered by the parties."). The trial court in Wise's case did not consider any of the *Bone-Club* factors on the record prior to removing the questioning of prospective jurors to chambers.[5] There was no opportunity for objection by the State, defense, or public; there was no articulation of a compelling interest for closure; there was no balancing of whatever that interest might have been against the public trial right; and there was no consideration of alternatives to closure. *Cf. Presley*, 558 U.S. at 216 ("[I]t was . . . incumbent upon [the trial court] to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide."). We do not comb through the record or attempt to infer the trial

---

[4] It is not necessary to engage in a complete "experience and logic test," *State v. Sublett*, 176 Wn.2d 58, 73, 292 P.3d 715 (2012) (plurality opinion), because "it is well settled that the right to a public trial also extends to jury selection," *Brightman*, 155 Wn.2d at 515. The private questioning of individual jurors is part of jury selection.

[5] We do not find any discussion by the trial court in the record that would allow us to distinguish this case like we did in *Momah* based on constructive consideration of the *Bone-Club* factors. *See Strode*, 167 Wn.2d at 233 (Fairhurst, J., concurring) ("The record [in *Momah*] shows that safeguarding Momah's rights to an impartial jury and a fair trial required the closure that occurred, and that all the attorneys, the defendant, and the trial court knew that all the proceedings were presumptively open and public.").

court's balancing of competing interests where it is not apparent in the record. *Bone-Club*, 128 Wn.2d at 261 (holding that a "*post hoc* determination [is not] sufficient to cure the trial court's deficiency"); *Waller*, 467 U.S. at 49 n.8.

¶17 Here, the trial court simply decided to privately question individual prospective jurors and indicated to all that this is the regular practice. Below, the Court of Appeals suggested that a *Bone-Club* analysis on the record was not required in Wise's case; this is incorrect. The trial court's failure to consider and apply *Bone-Club* before closing part of a trial to the public is error. *Brightman*, 155 Wn.2d at 518 ("Because the record in this case *lacks any hint* that the trial court considered Brightman's public trial right as required by *Bone-Club*, we cannot determine whether the closure was warranted." (emphasis added)).

*Violation of the Public Trial Right Is Structural Error*

¶18 Having held that Wise's public trial right was violated, we now move on to the structural nature of the violation. *Strode*, 167 Wn.2d at 231 (Alexander, C.J., plurality opinion). Wrongful deprivation of the right to a public trial has been repeatedly characterized as structural error by the United States Supreme Court. *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006); *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Waller*, 467 U.S. 39, for the proposition that "denial of [a] public trial" is a structural error); *Arizona v. Fulminante*, 499 U.S. 279, 294-95 (White, J., dissenting), 310 (Rehnquist, C.J., majority opinion), 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (same).[6]

¶19 Structural error is a special category of constitutional error that "affect[s] the framework within which the

---

[6] The dissent contends that the public trial right violation in this case is not a structural error simply because no contemporaneous objection was made. Dissent (J.M. Johnson, J.) at 27. However, the dissent fails to explain how an objection magically transforms an ordinary error into a structural one.

trial proceeds, rather than simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310. Where there is structural error " 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)). Structural error, including deprivation of the public trial right, is not subject to harmlessness analysis. *Id.* at 309-10; *Easterling*, 157 Wn.2d at 181. A defendant "should not be required to prove specific prejudice in order to obtain relief." *Waller*, 467 U.S. at 49. Accordingly, unless the trial court considers the *Bone-Club* factors on the record before closing a trial to the public, the wrongful deprivation of the public trial right is a structural error presumed to be prejudicial. *Easterling*, 157 Wn.2d at 181; *Orange*, 152 Wn.2d at 814; *Bone-Club*, 128 Wn.2d at 261-62.

¶20 While this court stated in *Momah* that not all closures are fundamentally unfair and thus not all closures are structural errors, *Momah* presented a unique set of facts.[7] 167 Wn.2d at 150-52. This court distinguished the public trial right violation in *Momah* from the public trial right violations in *Easterling, Brightman, Orange,* and *Bone-Club*, which all involved structural error. *Id. Momah* was distinguishable from other public trial violation cases on two principal bases: (1) more than failing to object, the defense affirmatively assented to the closure of voir dire and actively participated in designing the trial closure and (2) though it was not explicit, the trial court in *Momah* effectively considered the *Bone-Club* factors. *Id.* at 151-52; *Strode*, 167 Wn.2d at 234 (Fairhurst, J., concurring). At bottom, *Momah* presented a unique confluence of facts:

---

[7] In *Momah*, we implied that "fundamental unfairness" was the test for structural error. 167 Wn.2d at 150. However, the United States Supreme Court has clearly stated that "fundamental unfairness" is not the sole criterion of structural error and that there are other relevant considerations, including "the difficulty of assessing the effect of the error" and "the irrelevance of harmlessness." *Gonzalez-Lopez*, 548 U.S. at 149 n.4.

although the court erred in failing to comply with *Bone-Club*, the record made clear—without the need for a post hoc rationalization—that the defendant and public were aware of the rights at stake and that the court weighed those rights, with input from the defense, when considering the closure.

¶21 The error that Wise alleges, however—the closure of voir dire for the individual questioning of a number of prospective jurors in chambers without considering the *Bone-Club* factors—is structural error. *See Strode*, 167 Wn.2d at 231 (Alexander, C.J., plurality opinion). The unique facts of *Momah* are not present in Wise's case. We emphasize that it is unlikely that we will ever again see a case like *Momah* where there is effective, but not express, compliance with *Bone-Club*. The rule remains that deprivation of the public trial right is structural error. Since Wise did not waive his right to a public trial by not objecting and prejudice is presumed, a new trial is warranted.

### i. There Was No Waiver of the Right to a Public Trial

¶22 This court has long held that a defendant does not waive his right to a public trial by failing to object to a closure at trial. *State v. Marsh*, 126 Wash. 142, 145-47, 217 P. 705 (1923). That has remained the law of our state. *Bone-Club*, 128 Wn.2d at 257; *Strode*, 167 Wn.2d at 229 (Alexander, C.J., plurality opinion), 234 (Fairhurst, J., concurring). Wise did not object when the trial court moved part of the voir dire proceedings into chambers. His silence alone is not sufficient to be considered a waiver of his right to a public trial.[8]

¶23 Because Wise did not waive his public trial right under article I, section 22 of the Washington Constitution, we are not faced with the question of whether he has

---

[8] Wise cannot be said to have actively participated in effecting the courtroom closure during voir dire, as occurred in *Momah*. 167 Wn.2d at 146. This distinction is enough to render the invited error doctrine advanced by the dissent inapplicable.

standing to raise a challenge under article I, section 10.[9] *Cf. Presley*, 558 U.S. at 213 ("The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question."). What is clear, as we have previously held, is that an on-the-record *Bone-Club* analysis protects both the defendant's and the public's right to an open trial. *Easterling*, 157 Wn.2d at 174-75.

*ii. Prejudice Is Presumed where There Is a Public Trial Right Violation*

¶24 Violation of the public trial right, even when not preserved by objection, is presumed prejudicial to the defendant on direct appeal. *Bone-Club*, 128 Wn.2d at 261-62 (citing *Marsh*, 126 Wash. at 146-47). Since *Bone-Club*, this court has consistently held that a defendant who claims a deprivation of the public trial right need not make a showing of prejudice to prevail on that claim. *Easterling*, 157 Wn.2d at 181; *Brightman*, 155 Wn.2d at 517-18; *Orange*, 152 Wn.2d at 814. *But cf. Momah*, 167 Wn.2d at 151 (stating that prejudice was in fact clear in other cases).

¶25 This court's presumption of prejudice in public trial right violation cases is a sound approach, given that such a violation is structural error. *Cf. Gonzalez-Lopez*, 548 U.S. at 146 (holding that "[n]o additional showing of prejudice is required" where a defendant showed a violation of his right to choose his counsel). In *Waller*, the United States Supreme Court stated clearly that "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." 467 U.S. at 49. Structural errors, in this way, are different from other

---

[9] This court has not resolved whether a defendant may assert the public's right to an open trial. *Compare Strode*, 167 Wn.2d at 229 (Alexander, C.J., plurality opinion) ("[The defendant] cannot waive the public's right to open proceedings."), *and Easterling*, 157 Wn.2d at 179-80, *with Strode*, 167 Wn.2d at 236 (Fairhurst, J., concurring) ("A defendant should not be able to assert the right of the public or the press in order to overturn his conviction."). *See Presley*, 558 U. S. at 214 ("The public has a right to be present whether or not any party has asserted the right.").

constitutional errors on appeal.[10] The reason such structural error is rightly presumed prejudicial is that "it is often 'difficul[t]' to 'asses[s] the effect of the error.'" *Marcus*, 560 U.S. at 263 (alterations in original) (quoting *Gonzalez-Lopez*, 548 U.S. at 149 n.4).

¶26 "[T]he values of a public trial may be intangible and unprovable in any particular case," *Fulminante*, 499 U.S. at 294-95 (citing *Waller*, 467 U.S. at 49), yet we know them to be significant. A public trial helps assure that the trial is fair; it allows the public to see justice done, and it serves to hold the justice system accountable. *See Waller*, 467 U.S. at 46. "'Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.'" *Id.* at 46 n.4 (quoting *Estes v. Texas*, 381 U.S. 532, 588, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (Harlan, J., concurring)).

¶27 Deprivation of the public trial right may not appear to cause prejudice to any one defendant; in fact, it may not prejudice a single defendant at all. This is why such error is properly categorized as structural. *Gonzalez-Lopez*, 548 U.S. at 145 (holding that while "the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial[,] . . . it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair"). We recognize that any one deprivation of the public trial right will not likely devastate our system of justice or even necessarily cause a particular trial to be unfair (though of this latter part we can never be sure). But letting a deprivation of the public trial right go unchecked affects "the framework within

---

[10] We typically require a showing of prejudice (i.e., that the error had "'practical and identifiable consequences in the trial of the case'") when a constitutional error is raised for the first time on appeal. *State v. Kronich*, 160 Wn.2d 893, 899, 161 P.3d 982 (2007) (internal quotation marks omitted) (quoting *State v. Kirkpatrick*, 160 Wn.2d 873, 880, 161 P.3d 990 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012)), *overruled on other grounds by Jasper*, 174 Wn.2d 96; RAP 2.5(a)(3).

which the trial proceeds." *Fulminante*, 499 U.S. at 310. To allow such deprivations would erode our open, public system of justice and could ultimately result in unjust and secret trial proceedings. It is the framework of our system of justice that we must protect against erosion of the public trial right. It is this sturdy framework that in turn allows us to review trial error for harmlessness because we know that the structure in which trial errors occur is sound.

¶28 There is nothing in our rules or precedent that vitiates our approach.[11] Stability in the law and policy reasons demand that we maintain our rule: a violation of public trial right is per se prejudicial, even where the defendant failed to object at trial. *See Easterling*, 157 Wn.2d at 181; *Brightman*, 155 Wn.2d at 517-18; *Orange*, 152 Wn.2d at 814.

¶29 Here, we cannot know what the jurors might have said differently if questioned in the courtroom; what members of the public might have contributed to either the State's or defense's jury selection strategy; or, if the judge had properly closed the court under a *Bone-Club* analysis, what objections, considerations, or alternatives might have resulted and yielded. *Cf. United States v. Curbelo*, 343 F.3d 273, 281 (4th Cir. 2003) ("Like other structural errors, the error here has repercussions that are 'necessarily unquantifiable

---

[11] Nothing in our rules or our precedent precludes different treatment of structural error as a special category of "manifest error affecting a constitutional right." RAP 2.5(a)(3). While we consider this as a matter of state law, we also note that the United States Supreme Court "has several times declined to resolve whether 'structural' errors—those that affect 'the framework within which the trial proceeds,' [*Fulminante*, 499 U.S. at 310]—automatically satisfy the third prong [the prejudice prong] of the plain-error test." *Puckett v. United States*, 556 U.S. 129, 140, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009); Fed. R. Crim. P. 52(b). Some federal circuit courts have stated that the prejudice prong of the plain error test is automatically satisfied by a showing of structural error. *See, e.g., United States v. Adams*, 252 F.3d 276, 285-86 (3d Cir. 2001) (noting that a defendant must "make a specific showing of prejudice, unless he can show . . . that the error belongs in a special category of errors that should be corrected regardless of prejudice (i.e., the category of structural errors)" (footnote omitted)); *United States v. Robinson*, 275 F.3d 371, 384 (4th Cir. 2001) ("[B]ecause a violation . . . is not reviewable for harmlessness, the error necessarily affected Robinson's substantial rights." (citation omitted)).

and indeterminate.' *Sullivan* [*v. Louisiana*, 508 U.S. 275, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)]. We simply cannot know what [e]ffect a twelfth juror might have had on jury deliberations. Attempting to determine this would involve pure speculation."). Because it is impossible to show whether the structural error of deprivation of the public trial right is prejudicial, we will not require Wise to show prejudice in his case. "We will not ask defendants to do what the Supreme Court has said is impossible." *Owens v. United States*, 483 F.3d 48, 65 (1st Cir. 2007).

*Remedy*

¶30 While this court has noted that " '[t]he remedy should be appropriate to the violation,' " *Bone-Club*, 128 Wn.2d at 262 (alteration in original) (quoting *Waller*, 467 U.S. at 50), we have often held that the only appropriate remedy for violation of the public trial right is a new trial, *see, e.g., id.*; *Easterling*, 157 Wn.2d at 181; *Brightman*, 155 Wn.2d at 518. In *Waller*, the United States Supreme Court held that the remedy for a violation of the public trial right at a suppression hearing was a new suppression hearing, though it also implied that if the hearing result was different, a new trial might be required. 467 U.S. at 49-50.

¶31 Where a public trial right violation occurs at a suppression hearing or some other easily separable part of a trial, remand for a public hearing may be appropriate. However, we cannot reasonably order a "redo" of voir dire to remedy the public trial right violation that occurred here. The jury would necessarily be differently composed, and it is impossible to speculate as to the impact of that on Wise's trial. *See Curbelo*, 343 F.3d at 281.

¶32 Having held that Wise's public trial right was violated by the closure of part of voir dire proceedings without the requisite consideration of *Bone-Club*, we accordingly vacate his conviction and remand this case for a new trial that is open to the public, except as the trial court may direct a closure upon full scrutiny and consideration of the public trial right under *Bone-Club*.

## CONCLUSION

¶33 We do not lightly reach this conclusion, as we understand the cost of retrying any case. However, the open and public nature of our courts is a fundamental safeguard that assures fairness and accountability in the adjudication of *every* case. Closing a trial proceeding to the public requires that a trial court carefully consider the matter according to the *Bone-Club* analysis. This simple process preserves and protects the open and public administration of justice and all the benefits that derive from it. We reverse the Court of Appeals.

CHAMBERS, FAIRHURST, and STEPHENS, JJ., and ALEXANDER, J. PRO TEM., concur.

¶34 MADSEN, C.J. (dissenting) — In my concurrence in *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012) (plurality opinion), I explain why I believe the court's jurisprudence regarding the right to a public trial is flawed. Rather than repeat the extended discussion in *Sublett* in each of the additional three cases now before the court that involve the right to a public trial, *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012); and *In re Personal Restraint of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012) (plurality opinion), I have chosen in these three cases, including the present case, to highlight important points.

¶35 In brief, court-announced rules in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), and later cases are not compelled by article I, section 22 of the Washington State Constitution. Nevertheless, this court has adopted a rigid doctrine: If there is a closure of the trial and no inquiry was made on the record that shows the closure was justified, then reversal of the defendant's conviction is required and a new trial is mandatory. In my concurrence in *Sublett*,

I show why this absolute rule is without constitutional justification. No similar rule is compelled under the Sixth Amendment to the United States Constitution or by any United States Supreme Court precedent.[12] In addition, it fails to accord with the prevailing case law regarding public trial rights under the Sixth Amendment and similar public trial provisions in other states' constitutions. It is a costly and unnecessary response that is not constitutionally required, and the right to a public trial can be fully protected without it.

¶36 Moreover, in the public trial right cases, we have failed to follow our own established rules of appellate procedure and instead carve out a doctrine wholly apart from the established procedures for review of claimed constitutional error.

¶37 In the present case, the majority acknowledges that the right to a public trial is not absolute and that there are legitimate reasons for closing a trial. The five-part *Bone-Club* inquiry is used to determine whether in a given case closure is justified under article I, section 22 of the Washington State Constitution. *Bone-Club*, 128 Wn.2d at 258-59.[13] A parallel inquiry is required for purposes of the Sixth Amendment. *See Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). However, because no on-the-record *Bone-Club* inquiry was made, the majority holds that closure consisting of the in-chambers individual voir dire of a small number of potential jurors in this case violated Mr. Eric Wise's constitutional rights to a public trial. The majority refuses to engage in an after-the-fact inquiry into

---

[12] Our *Bone-Club* analysis under article I, section 22 mirrors the United States Supreme Court's analysis under the Sixth Amendment. *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005); *Bone-Club*, 128 Wn.2d at 259-60.

[13] Under this inquiry (1) there must be a determination of whether a compelling interest necessitates closure, (2) before closure occurs there must be an opportunity for objections to closure, (3) the least restrictive means must be used that are required to protect the threatened interest, (4) before closure is ordered the court must weigh the competing interests involved, and (5) if ordered the closure must be no broader or longer than necessary to serve the purpose of the closure. *Bone-Club*, 128 Wn.2d at 258-59.

whether this closure was justified and concludes that the trial court's failure to engage in the on-the-record *Bone-Club* inquiry is structural error requiring reversal and a new trial.

¶38 Thus, the failure to engage in the *Bone-Club* inquiry, itself, is transformed into the most serious type of constitutional error, for which there is no remedy except a new trial. It is entirely possible, and in fact highly probable, that the closure in this case would have been found to be justified had the on-the-record inquiry occurred at the time of the closure. Further, Mr. Wise benefited considerably from the individual private voir dire of the jury venire members— indeed, that 6 of the 10 potential jurors who were individually questioned were excused for cause suggests the importance of this candor. The private questioning allowed the potential jurors to be forthright about personal and sensitive matters bearing on their ability to decide Mr. Wise's case fairly and without bias. Whether potential jurors would be as forthcoming if required to relay personal information in a public setting is doubtful, but at the least it can be assumed that the same degree of candor would not have existed. Because of the questioning, Mr. Wise was much better positioned to make his decisions about jury selection.

¶39 In addition, the public's right to access the proceedings was not unduly hampered because the individual voir dire was recorded, transcribed, and made a part of the public record. Thus, the goals served by the right to a public trial were in fact protected and advanced by the procedure that occurred. The voir dire was contemporaneously transcribed, assuring that the court and counsel were at all times aware of their responsibilities to carry out their functions properly. We have no reason whatsoever to think that any improper practices or conduct occurred. And because this was a part of jury voir dire and not of the trial itself, no issue was implicated regarding witnesses or their testimony.

¶40 We have good reason to believe that the closure that occurred in this case was justified. But not only does the majority refuse to consider this possibility on this record, it also flatly refuses to permit any after-the-fact inquiry into whether closure was justified, whether the inquiry is conducted by an appellate court or by the superior court on remand for either findings or a hearing and findings. The majority declares that we must presume prejudice.

¶41 I agree that bypassing the *Bone-Club* (or *Waller*) inquiry is error. But I do not agree it is error that must be presumed prejudicial. We have no basis for the conclusion and *only* the conclusion that an unjustified closure—and thus an unconstitutional closure—occurred, when a post-trial inquiry might well establish that closure was in fact justified. But the majority insists, treating the failure to engage in the *Bone-Club* inquiry *itself* as a constitutional violation independent of any actual violation of the right to a public trial. The treatment is unwarranted. The United States Supreme Court itself engaged in an after-the-fact, on-the-record-inquiry into whether the closure in *Waller* was justified.

¶42 As Justice J.M. Johnson's dissent correctly explains, the majority's approach is also contrary to our Rules of Appellate Procedure. We have no reason to depart from our settled rules for appellate review. The great majority of courts addressing the issue, for example, have found it highly significant if the defendant failed to object to closure, raising the issue for the first time on appellate review. We have an established set of principles that apply when claimed constitutional error is raised for the first time on appellate review. It is important that we adhere to these principles, for when we do not, justice is whatever we decide it is in the very case before the court, no more and no less.

¶43 But the first question is, of course, whether constitutional error occurred at all. There is no need, contrary to the majority's belief, to conclude that any and all closures without a *Bone-Club* analysis must conclusively be deemed

a violation of the right to a public trial, much less that the failure to engage in the *Bone-Club* inquiry itself is the equivalent of an unconstitutional closure that constitutes structural error.

¶44 The only trial closure that has ever been identified by the United States Supreme Court as structural error was the complete closure of the suppression hearing in *Waller*. That such a closure would constitute structural error is hardly to be questioned. But it is exceedingly doubtful that any closure, no matter of what aspect of a trial and no matter of what duration or breadth, always must be deemed structural error that requires a new trial.

¶45 It is worthwhile to consider the standard of review that applies when a trial court engages in the *Bone-Club* analysis. As the majority correctly points out, a trial court's decision to close a courtroom after engaging in the *Bone-Club* analysis is reviewed for abuse of discretion. When this deferential standard is juxtaposed against the rigid, inflexible rule of structural error for virtually any closure in the absence of the *Bone-Club* inquiry, regardless of whether closure was in fact justified, the difference is remarkable.

¶46 Finally, I cannot agree with the majority's decision to virtually ignore the majority decision of this court in *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010), in favor of a plurality decision in *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009). This approach turns precedent into pretense. *Momah* correctly shows that just because an error is structural error in one context does not mean that every error of the same kind is structural error. *Momah* also shows that when the record is sufficient, an after-the-fact *Bone-Club* inquiry can be made on the record by an appellate court. *Momah*, 167 Wn.2d at 151-56. But the majority in *Wise* ignores *Momah*. It should not.

¶47 I dissent. The court should consider the record on appeal and make a posttrial *Bone-Club* inquiry if possible. If the record is not sufficient for this inquiry, this case

should be remanded to superior court for a determination of whether the private, limited questioning of a few potential jurors was a violation of the right to a public trial. If it ultimately proves impossible to make this inquiry or if the proponent of closure cannot satisfy the burden of justifying closure under the *Bone-Club* factors, then the closure must be found unconstitutional. Only then would the issue of the proper remedy arise.

¶48 J.M. JOHNSON, J. (dissenting) — I respectfully dissent. Even if a closure occurred in this case, Eric D. Wise failed to preserve any objection for appeal. RAP 2.5(a) provides that a claim of error generally will not be reviewed if it was not raised in the trial court, unless it falls under a specified exception. No exception applies here.

¶49 Under RAP 2.5(a)(3), a party may raise a manifest error affecting a constitutional right for the first time on appeal. Determining whether this exception applies requires a two-part test: First, the court must determine whether the error is truly constitutional. Then, the court should determine whether the error is "manifest." *State v. Kronich*, 160 Wn.2d 893, 899, 161 P.3d 982 (2007), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012). To be considered "manifest," there must be some evidence the error had "practical and identifiable consequences in the case." *State v. Schaler*, 169 Wn.2d 274, 282-83, 236 P.3d 858 (2010). In other words, there must be " 'a showing of actual prejudice.' " *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). In this case, there is no indication the individual questioning of potential jurors prejudiced Wise. If anything, Wise benefited from the information obtained from the potential jurors' candid responses. Thus, the alleged error was not "manifest" and Wise cannot raise it for the first time on appeal.

¶50 The invited error doctrine dictates a similar result. "The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009), *cert. denied*, 131 S. Ct. 160 (2010). In *Momah*, the defendant actively participated in the individual juror questioning that took place in chambers. He benefited from this procedure and exercised a number of challenges for cause based on the information learned. *Id*. at 155. The court found this conduct comparable to invited error and held Momah could not challenge the jury selection process. *Id*. at 154 ("While *Momah* does not present a classic case of invited error, the doctrine [is] helpful for the purposes of determining the appropriate remedy in this case."). Similarly, Wise's counsel actively engaged in the questioning of jurors in chambers. He was able to strike jurors for cause based on information learned in chambers: information that may not have been candidly revealed under the watch of the public eye. Contrary to our reasoning in *Momah*, the majority allows Wise to exploit this procedure to his benefit and then invoke it as a basis for a new trial. I would hold that invited error doctrine is instructive here, and Wise should not receive the windfall of a new trial.

¶51 Finding the public trial right was violated, the majority leaps to the conclusion that such an error is "structural" and demands automatic reversal. Majority at 6. Our precedent does not command this result. *See Momah*, 167 Wn.2d at 150 ("not all courtroom closure errors are fundamentally unfair and thus not all are structural errors"). A "structural error" is an error that " ' "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence".' " *Id*. at 149 (alteration in original) (quoting *Washington v. Recuenco*, 548 U.S. 212, 218-19, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999))). A violation of the public trial right is

presumed to be structural error if the closure occurs *over an objection. See Waller v. Georgia*, 467 U.S. 39, 47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). A closure defect that transpired *without objection*, however, should be subject to harmless error review unless a showing of prejudice is made.

¶52 The majority cites several United States Supreme Court cases, including *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010) and *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), for the proposition that "[w]rongful deprivation of the right to a public trial has been repeatedly characterized as structural error by the United States Supreme Court." Majority at 13. This is a misleading characterization of that Supreme Court precedent. These cases merely reference *Waller* to demonstrate that the violation of the public trial right *can* be a type of structural error. Yet *Waller* is distinguishable from the case at bar because the courtroom was closed over Waller's objection. *See Waller*, 467 U.S. at 42. No objection was made here.

¶53 The Supreme Court has not decided whether individual questioning of specific jurors in chambers, in contrast to questioning the entire panel in closed court, amounts to structural error. Given the Supreme Court's reluctance to classify errors as structural, it is unlikely to make such a determination. *See Recuenco*, 548 U.S. at 218 (" '[M]ost constitutional errors can be harmless.' . . . Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal." (internal quotation marks omitted) (quoting *Neder*, 527 U.S. at 8)). This is especially true in light of the Court's decision in *Press-Enterprise Co. v. Superior Court*, holding the in camera examination of prospective jurors is not a violation of the public trial right so long as counsel is present and a record is made. 464 U.S. 501, 512, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

¶54 This case is similar to *Momah*, where we found no structural error. 167 Wn.2d at 156. Wise actively benefited from the jury selection process, and he has shown no prejudice to his right to a fair trial. Because Wise failed to object to the individual questioning at trial and there is no evidence of prejudice, the alleged closure cannot be classified as "structural." Therefore, the majority's automatic reversal of his conviction is unwarranted.

CONCLUSION

¶55 Wise made no objection to the jury selection process, and he makes no showing of prejudice now. Therefore, any claimed error was not preserved for review on appeal. For this reason, I would uphold Wise's conviction.

C. JOHNSON and WIGGINS, JJ., concur with J.M. JOHNSON, J.