IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 26964-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID MORDECAI WHITMER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — David Whitmer was convicted of second degree robbery

following a failed shoplifting at the Moses Lake Wal-Mart store. Due to publicity about

similar incidents, some of the potential jurors thought they had heard about the case and

the court decided to question them separately in the jury room. Although prudent, this

action was erroneous and we are required to reverse the conviction and remand for a new

trial.

## FACTS[1]

Mr. Whitmer was charged with second degree robbery and the matter was set for

jury trial. During jury selection, three of the jurors indicated in response to a general

---

[1] Since we find the jury selection issue dispositive, there is no need to address the substantive facts of the case, nor do we discuss the other issues presented, including those raised in the statement of additional grounds.

question that they previously had heard about the case. The court indicated that it would prefer to question the three jurors privately in the jury room. Counsel for both Mr. Whitmer and the State agreed with the procedure. At the point where the court indicated it was time for the State's counsel to start questioning the venire, the prosecutor asked to approach. All counsel spoke with the court off the record. The judge then announced:

> THE COURT: Before the attorneys start I do need to meet with Jurors Number 27, 29 and 40. We're going to meet with them in the jury room. These are the jurors that said they'd heard about the case. And we do need to speak to them. I can't tell you exactly how long it will last, but I expect about ten minutes is how long this will take. About ten minutes.
>
> So we'll be meeting in the jury room, counsel, here. If you'll go over there.
>
> We'll get right back with you, the rest of you.

Report of Proceedings, (Jan. 16, 2008) at 76-77.

The three jurors were then individually brought into the room and questioned about their knowledge of the case by the court and defense counsel. Juror 29, a Wal-Mart employee, was excused for cause by the agreement of the parties. At the conclusion of this private voir dire, the court and counsel returned to the courtroom and group voir dire commenced. Neither Juror 27 nor Juror 40 ultimately served on the panel.

The jury convicted Mr. Whitmer as charged. The court imposed a standard range sentence. Mr. Whitmer timely appealed to this court. This court initially stayed

2

the appeal pending the results of the pending decisions in *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) and *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009). After that first stay was lifted, a panel of this court stayed the case pending the decision in *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012). When the second stay was lifted, the case was considered by a panel without oral argument.

## ANALYSIS

The jury selection issue is dispositive. We conclude that the court closed the courtroom without making an inquiry of the public as now required by our Supreme Court. Accordingly, we reverse the conviction and remand for a new trial.

Art. I, § 22 of the Washington Constitution guarantees a criminal defendant a right to a speedy public trial.[2] As relevant here, the public trial right requires that most aspects of a trial, including jury selection, be conducted in the courtroom subject to public scrutiny. *Wise*, 176 Wn.2d at 11-13; *Momah*, 167 Wn.2d at 148; *State v. Brightman*, 155 Wn.2d 506, 515-16, 122 P.3d 150 (2005); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004). A courtroom can only be closed to the public if the court first considers the five factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). The defendant can raise this issue for the

---

[2] Numerous cases discuss the history and meaning of this provision. We will not belabor this opinion with a recitation of that history.

3

first time on appeal even if there was no objection to the procedure at trial. *Brightman*,

155 Wn.2d at 516-17. An error in closing the courtroom typically is considered structural

in nature and the defendant need not show prejudice. *Wise*, 176 Wn.2d at 13-14.

Among the *Bone-Club* factors is a requirement that the public be given an

opportunity to object before the closure. *Bone-Club*, 128 Wn.2d at 258. That was not

done here. Thus, we are required to reverse this conviction under *Brightman* unless some

reason exists that indicates structural error did not occur in this case. The prosecutor

presents two arguments suggesting that this is not the normal case.

First, the prosecutor argues that the jury room at use in this case was not closed

to the public at all because it had an entrance from the clerk's office rather than solely

from the courtroom and is commonly used by attorneys to discuss matters with their

clients. Resp't Suppl. Br. at 1-2. However, those facts are not in the record of this case,

probably for the understandable reason that there was no reason to make such a record in

view of the defendant's failure to object.[3] Even then, it would not normally be a problem

for the prosecutor since it is the burden of the party claiming constitutional error to

---

[3] RAP 9.11 creates a procedure for adding evidence on appeal that might have application in this situation, and could particularly be useful when a case is on stay status. Even if the stated facts were in the record of this case, however, they would be insufficient without more.

4

No. 26964-7-III
*State v. Whitmer*

establish the existence of the error in the record. *See, e.g., State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). That rule is reversed in this setting, though.

*Brightman* explained in this manner:

> However, the *Orange* court defined the nature of the closure by looking *solely to the transcript of the trial court's ruling* to determine the presumptive effect of the closure order. The majority ultimately refused to impose upon the defendant the burden of proving that the trial court's ruling was carried out. Instead, "the very existence of the mandated order create[d] a strong presumption that the order was carried out in accordance with its drafting." Thus, once the plain language of the trial court's ruling imposes a closure, the burden is on the State to overcome the strong presumption that the courtroom was closed. Here, the State presents no evidence to overcome the presumption that closure in fact occurred.

155 Wn.2d at 516 (emphasis added; footnote and citations omitted; italicized emphasis in original).

Under this presumption, the prosecutor's argument fails. The court took the three members of the venire individually to the jury room for the reason that it was private. Nothing in the transcript suggests that anyone other than the trial judge, the defendant, and counsel were present when each juror was interviewed. While the room might normally be open to the public, we assume that when the jury is using the room, the public cannot be present. It is difficult to imagine that the jury room would be open to the public during trial, and certainly jury selection is a part of trial. Were the room

5

actually open to the public during jury selection, there undoubtedly would be other issues presented for this appeal.

The prosecutor also attempts to analogize this case to *Momah*, the one instance where our court has not found a voir dire closure to be structural error. As explained by the court in *Wise*, *Momah* was unique because the trial court effectively considered all of the *Bone-Club* factors on the record although it did not articulate that it was doing so. *Wise*, 176 Wn.2d at 14-15. The defense also actively took part in the closure and argued for extension of the closure due to the defendant's heightened need for information in a case that had generated extensive publicity. *Id.* at 14.

This case is not *Momah*. Although defense counsel consented to the private questioning and took part in it, he was not an organizer of the activity and did not seek to expand the private questioning. More critically, the public was not made aware of its right to object to the procedure. *Id.* at 15. Under these facts, the *Momah* exception is not satisfied here.

Although we reverse the conviction, we do not fault the court or prosecutor. In the more than five years since this case was tried, many dozens of opinions have issued that provide greater clarity on this issue than existed at the time of trial. Indeed, the Washington Supreme Court has granted review on ten more cases involving various aspects of the public trial right in the past few months; many of those will be argued this

6

coming term. We cannot predict the future, but trial judges all know by now that when a closure is anticipated, the *Bone-Club* factors must first be considered. While precisely what actions will amount to a closure[4] is still a murky area of the law, the prudent trial judge may well be advised to make sure that all aspects of trial occur in the open courtroom unless counsel expressly ask for some privacy, a request that should in many instances trigger the *Bone-Club* analysis.

Reversed and remanded for trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____          _____
Brown, J.                                                    Siddoway, J.

_____

[4] The newly adopted "experience and logic" test may give some guidance to the trial bench. *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012).