IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 25850-5-III |
| | ) | |
| Respondent and | ) | |
| Cross-Appellant, | ) | |
| v. | ) | |
| | ) | |
| PAUL R. LIVINGSTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant and | ) | |
| Cross-Respondent. | ) | |

BROWN, J. — Paul R. Livingston appeals his conspiracy to commit first degree murder and first degree murder convictions, contending his public trial right was violated when the court questioned select jurors individually in a separate room based on their responses to a questionnaire. Mr. Livingston's pro se statement of additional grounds (SAG) for review alleges ineffective assistance of counsel and court error in accepting his CrR 3.5 hearing waiver. This court stayed this appeal pending Supreme Court decisions on similar cases. Following precedent, we reverse.

FACTS

The State charged Mr. Livingston with conspiracy to commit first degree murder and first degree murder following his confession to his involvement in the shooting death of Kevin Boyle, a renter in the home connected to an apartment his girlfriend was

No. 25850-5-III
*State v. Livingston*

renting. Before jury selection, the following colloquy between defense counsel and the court occurred:

> [DEFENSE COUNSEL]: Your Honor, it's been awhile since I've tried a case of this nature before you the last one we did the questions in [the] jury room. Will we be using much the same format?
> THE COURT: That is my preference. One of these days I'm probably gonna get called on it, so far I haven't been. Because there's the potential for personal disclosure of information, particularly on the question. Not so much the publicity question, but on the question about violent crime and that sort of thing. Unless somebody has an objection, that's what I usually do, use the jury deliberation room.
> MR. DRESSLER: That's fine with me, your Honor.
> THE COURT: I don't expect to get an objection from anybody here. But one of these days I'm gonna have some problems. But I respect the jurors' privacy. A couple of these questions require some candid answers they might be uncomfortable with in a public setting.

Report of Proceedings (RP) (Nov. 2, 2006) at 520-21.

The transcript of the jury selection process begins with the notation: "(Jury in.)" RP (Nov. 6, 2006) at 560. The court explained the jury process, and handed out questionnaires to the assembled prospective jurors. The court told the jury they would return to the jury assembly room to answer the questionnaire. The court next told the jury that the questionnaires would be reviewed, "[a]nd for those jurors that we need to talk with, we will set up some times to return to court." RP (Nov. 6, 2006) at 568. The court explained, "And we won't be able to tell you when will be back in session together to start the main part of jury selection until I know how many people we have to talk to

2

individually, figure out the blocks of time, and tell you when we'll be returning." RP (Nov. 6, 2006) at 568.

After the court finished reading the questions, the court reporter noted the jury left the courtroom with "(Jury out)." RP (Nov. 6, 2006) at 571. The court discussed scheduling, and then the record notes, "(In Recess)." *Id.* at 572. Next, the court reporter notes, "(Individual jury voir dire.)." RP (Nov. 6, 2006) at 572. The court, defense counsel, and the prosecutor privately questioned select individual jurors, one at a time, regarding their answers to the questionnaire apparently in the jury room.

One juror asked the court how the process worked, and the court responded, "We'll go into the process as I described it, but then we had this little separate thing we needed to do. Once this is done, then with those jurors who remain, we'll go into the regular process in the courtroom." RP (Nov. 6, 2006) at 579.

The jury was selected and trial began. The jury found Mr. Livingston guilty as charged. He appealed.

## ANALYSIS

The dispositive issue is whether Mr. Livingston's public trial right was violated based on questioning individual jurors in a separate room.

We must first decide whether the trial court's private questioning constituted a closure. A criminal defendant has a right to a public trial as guaranteed by our State and Federal Constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

Defendants can raise claims of public trial rights violations for the first time on appeal. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

The public trial right in voir dire proceedings extends to the questioning of individual prospective jurors. *Wise*, 176 Wn.2d at 16-19. The right to a public trial is not absolute, however, a trial court may close the courtroom so long as it considers the five criteria outlined in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Failure to conduct a *Bone-Club* analysis before closing the proceeding is error generally requiring a new trial because voir dire is an inseparable part of trial. *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).

In *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009), jury members were brought into the judge's chambers for questioning regarding sensitive topics, with the trial judge, prosecuting attorney, defense counsel, and the defendant present. *Strode*, 167 Wn.2d at 224. The purpose was to protect the jurors' privacy interests. Our Supreme Court decided this amounted to a closure and, because the court did not first conduct a *Bone-Club* analysis, the defendant's right to a public trial was violated. 128 Wn.2d at 231. In *Wise* and *Paumier*, the court recently reached similar holdings. *Wise*, 176 Wn.2d at 15; *Paumier*, 176 Wn.2d at 37.

Our record shows portions of voir dire were conducted in a private room with solely the court, defense counsel, two deputy prosecutors, and a police detective present. Mr. Livingston does not appear to be present. *Id.* The sole explanation of why the separate questioning was the court's comment to defense counsel, "A couple of

these questions requires some candid answers they might be uncomfortable with in a public setting." RP (Nov. 2, 2006) at 521.

Based on *Strode* and other later case law, the trial court erroneously closed the courtroom when it privately questioned potential jurors during voir dire without first conducting a *Bone-Club* analysis. By comparison, in *State v. Momah*, 167 Wn.2d 140, 151-52, 217 P.3d 321 (2009) our Supreme Court found no public trial right violation where the defendant affirmatively assented to the closure of voir dire, actively participated in designing the trial closure, and, while it was not explicit, the trial court effectively considered the *Bone-Club* factors. Here, the trial court did not explicitly or implicitly consider the *Bone-Club* factors or acknowledge it was closing the courtroom. The single explanation of why the separate questioning was the court's insufficient comment to defense counsel. Because the facts here are similar to *Strode* and distinct from *Momah*, we follow the precedent and hold Mr. Livingston's public trial rights were violated when jurors were questioned in a private room without the court first conducting a *Bone-Club* analysis. If a trial court does not weigh the *Bone-Club* factors on the record before closing trial proceedings to the public, we must reverse and remand for a new trial because the error is structural, presumptively prejudicial, and never harmless. *Wise*, 176 Wn.2d at 14-19; *Paumier*, 176 Wn.2d at 35-37.

Since reversal is necessary based on public trial violation, we do not reach Mr. Livingston's SAG issues.

Reversed.

5

No. 25850-5-III
*State v. Livingston*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.
_____
Brown, J.

WE CONCUR:

Siddoway, C.J.
_____
Siddoway, C.J.

Lawrence-Berrey, J.
_____
Lawrence-Berrey, J.

6