IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 25999-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUDOLPH NICACIO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — We stayed this case in 2008 and lifted the stay in November 2014 following the Washington Supreme Court's decision in *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014). Among other assignments of error by the defendant, he asserts a public trial violation arising out of the private questioning of potential jurors during the jury selection process. As occurred in similar trials of its vintage, the conduct of the private questioning without first conducting a *Bone-Club*[1] analysis violated article I, section 22 of the Washington Constitution and the Sixth Amendment of the United States Constitution. We vacate the conviction and remand.

RELEVANT PROCEDURAL BACKGROUND

Rudolph Nicacio was charged in 2006 with one count of indecent liberties. During the voir dire process at his jury trial, the trial judge asked the jurors whether they

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

or a family member had "experience with a similar case," explaining that by "similar case," he meant "being a victim of sex abuse." Report of Proceedings (RP) at 86-87. Four prospective jurors who answered yes also indicated that the experience could affect their ability to be a fair and impartial juror. To those jurors, the court then said:

> And of those jurors—I'm narrowing it down a little bit—of those jurors,—rather than address questions in front of the whole panel would you prefer to do it one-on-one in chambers with the court?
>
> The intent of this is not to embarrass anybody. And I don't want to do that.

RP at 87. Each of the four members of the venire expressed a preference for private questioning. They were then questioned in chambers by the trial judge and the lawyers. The proceedings were reported. Based on their answers, three were excused for cause.

Later on in voir dire, Mr. Nicacio's lawyer asked venire members whether any of them had "thought of . . . something you think I need to know in order that you can be a fair and impartial juror" and one signified yes but indicated that she would "rather not say" what it was. RP at 150-51. Defense counsel asked if the juror "want[ed] to speak in private" and, on an indication that she did, questioning was conducted in chambers. RP at 151-56. While the defense challenged the juror for cause, the trial court denied the motion to excuse her.

2

Toward the end of trial, it was brought to the court's attention that someone had seen a witness in the case, Sergeant Steve Groseclose, speaking with a juror that morning. Both the sergeant and the juror were questioned by the judge in chambers about the conversation, with the lawyers for the parties present. The juror's interview, in which the juror denied knowing the sergeant and explained that they had only chatted briefly about the weather, was reported. If the sergeant's interview was reported, it has not been included in the record on appeal. Following the interviews, the trial judge announced in open court, but outside the presence of the jury, what had occurred. The judge announced that the option of treating the juror as the alternate and excusing him or her before deliberations had been offered to the parties but declined. Lawyers for the parties affirmed that neither was requesting a mistrial.

Neither the State nor Mr. Nicacio objected to any of this private questioning of prospective jurors, the juror, or Sgt. Groseclose. Before the private questioning, the judge made no reference to Mr. Nicacio's public trial right. The judge did not ask if anyone objected to the private questioning. Other than his short explanation of why he was offering private questioning, he did not offer a reason for his partial closure of voir dire and did not give consideration on the record to the countervailing importance of open proceedings.

Challenges for cause were also addressed in the judge's chambers. One can infer from the record that the judge was concerned about bench conferences being overheard in

3

his courtroom, because when one of the lawyers asked for a sidebar or to approach the bench, the judge more often than not recessed and then heard from the lawyers in his chambers. *See, e.g.*, RP at 142-44; 305-09; 371-74; 384-86.

The first challenges arose during preliminary questioning of the prospective jurors by the judge. The judge identified the defendant and the charges and asked prospective jurors whether any of them had heard of the case. Seven jurors answered that they had heard of the case, explained how, and, in open court, answered the judge's questions about whether it would affect their ability to be fair and impartial. Only after the questioning was concluded did the court ask the lawyers to join him in chambers. Before leaving the courtroom, the judge told jurors:

> Ladies and gentlemen, you will hear me on occasion say "the record should reflect" this and that. That's because we're recording these proceedings. And we record most everything that we do.
> We're going to go into chambers now and talk a little bit. And we're going to record in chambers what we're doing also, because I have a microphone in there.

RP at 67-68. After discussing for cause challenges with the lawyers in chambers, the judge excused four of the potential jurors.

The judge continued with preliminary questions, including questioning potential jurors about their ability to attend for the expected duration of the trial. Four stated that attending trial would be a hardship. After hearing their explanations why, the trial judge and the lawyers retired for a second time to the judge's chambers to address challenges,

after which one of the four potential jurors was excused. Finally, during the lawyers'

voir dire of the potential jurors, the judge conducted an in-chambers conference rather

than a sidebar when Mr. Nicacio's lawyer asked to approach the bench to make a

challenge for cause.

At the conclusion of trial, the jury returned a verdict of guilty and the trial court

sentenced Mr. Nicacio to 15 months of confinement. Mr. Nicacio filed a timely appeal in

March 2007. In December 2007, he filed a supplemental brief that raised violations of

his public trial right and his right to be present at critical stages of the proceedings as

additional assignments of error.

The appeal was stayed by this court in May 2008 pending the Washington

Supreme Court's review of this court's decision in *State v. Frawley*, 140 Wn. App. 713,

167 P.3d 593 (2007). While review of *Frawley* was pending, Mr. Nicacio served and

completed his sentence. The stay of the appeal was lifted following the Supreme Court's

decision in *Frawley*.

## ANALYSIS

Mr. Nicacio's opening brief made eight assignments of error but it is his

supplemental assignment of error to violation of his public trial right that proves

dispositive. The public trial issue is the only issue we address.

Article I, section 22 of the Washington Constitution and the Sixth Amendment to

the United States Constitution both guarantee a defendant a right to a public trial. The

right is not absolute and there are other rights and considerations that must sometimes be served by limiting public access to a trial. *State v. Wise*, 176 Wn.2d, 1, 9, 288 P.3d 1113 (2012) (citing *Waller v. Georgia*, 467 U.S. 39, 45, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). In *Bone-Club*, 128 Wn.2d 254, our Supreme Court identified the analytic framework by which trial courts must balance the public trial right and other competing rights and interests, identifying five criteria that a trial court must consider on the record before closing trial proceedings to the public. The trial court must, at a minimum, name the right that a defendant and the public will lose by moving proceedings into a private room; name the compelling interest that motivates closure; weigh these competing rights and interests on the record; provide the opportunity for objection; and consider alternatives to closure, opting for the least restrictive. *Id.* at 258-59.

Closure of the courtroom without undertaking the *Bone-Club* analysis is a structural error from which prejudice is presumed; accordingly, "a new trial is the only remedy." *Frawley*, 181 Wn.2d at 459; *Wise*, 176 Wn.2d at 15. A defendant's failure to object to a public trial violation at the time of trial does not preclude appellate review under RAP 2.5. *State v. Paumier*, 176 Wn.2d 29, 36, 288 P.3d 1126 (2012). Whether an accused's constitutional public trial right has been violated is a question of law that we review de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

While justice should be administered openly, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a

6

closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, the Washington Supreme Court adopted the experience and logic test that the United States Supreme Court had formulated in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)), to determine whether the core values of the public trial right guaranteed by the First Amendment are implicated. *Sublett* at 73. "The first part of the test, the experience prong, asks 'whether the place and process have historically been open to the press and general public.' The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (citations omitted) (quoting *Press-Enter.*, 478 U.S. at 8). The experience and logic test need not be reapplied if prior cases have applied the public trial right to the proceeding at issue. *State v. Love*, 2015 WL 4366419 at *3, __ P.3d __ (2015).

A three-step analytic framework guides our analysis of public trial right cases: we begin by examining whether the public trial right is implicated at all; then turn to the question of whether, if it is implicated, there is in fact a closure of the courtroom; and if there is a closure, whether the closure was justified. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014) (citing *State v. Sublett*, 176 Wn.2d at 92-93, (Madsen, C.J., concurring)).

While the law was considerably less clear at the time of Mr. Nicacio's 2006 trial, it is now well settled that the public trial right attaches to jury selection, including to the

7

process of voir dire, and including to partial closures for the purpose of questioning jurors about sensitive matters. *Wise*, 176 Wn.2d at 11-12; *Paumier*, 176 Wn.2d at 35.

The State conceded as much in its original response and admitted that the court did not conduct a *Bone-Club* analysis in connection with the closures challenged by Mr. Nicacio. But it argued in 2008 that Mr. Nicacio had either invited or waived the error by acquiescing in, participating in, and benefitting from, the private questioning process. The State's arguments fail under later case law. The Washington Supreme Court has held and reaffirmed that a failure to object in the trial court does not present an issue of waiver in the sense of failure to preserve error under RAP 2.5(a). *State v. Strode*, 167 Wn.2d 222, 229, 217 P.3d 310 (2009) (citing *State v. Brightman*, 155 Wn.2d 506, 517, 122 P.3d 150 (2005)); *Wise*, 176 Wn.2d at 15; *State v. Shearer*, 181 Wn.2d 564, 569-70, 334 P.3d 1078 (2014).

In *Frawley*, the Supreme Court addressed the different issue of whether a defendant can affirmatively waive the error of a trial court that closes a trial without first conducting a *Bone-Club* analysis. While no single opinion garnered a majority of the court, seven justices agreed that a criminal defendant may affirmatively waive the right to a public trial by a knowing, voluntary, and intelligent waiver. *See Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring); *Frawley*, 181 Wn.2d at 470 (Gordon McCloud, J., concurring in part and dissenting in part); and *Frawley*, 181 Wn.2d at 477 (Wiggins, J., dissenting). As pointed out in the concurring and dissenting opinion by Justice Gordon

McCloud, "[m]ost of our cases hold that a mere failure to object to a closure does *not* waive the right to a public trial," and several cases speak of waiver requiring a "'meaningful opportunity to object,'" by which they mean that there must be some discussion of the public trial right to which the defendant affirmatively responds. *Frawley*, 181 Wn.2d at 472-73 (quoting *Bone-Club*, 128 Wn.2d at 261). No member of the court in *Frawley* disagreed with the view that "a defendant's waiver of [the] right cannot be presumed from a silent record, from a waiver of some other right, or from the defendant's decision to participate in a proceeding once the court has closed it to the public." *Frawley*, 181 Wn.2d at 469-70.

The decision in *Frawley* addressed two consolidated cases, both presenting more and better evidence of an arguable waiver than Mr. Nicacio can point to in the record of his trial. Yet eight justices in *Frawley* found the evidence of waiver inadequate in the case of defendant Frawley and in the case of the other defendant, Applegate, five justices found the evidence of waiver inadequate even though Applegate affirmatively

9

communicated through his lawyer that he had no objection to the closure.[2]

There is nothing in the record of Mr. Nicacio's trial to support affirmative waiver, with the result that a new trial is required.

Since a new trial is required because of the partial closure of the voir dire process, we need not resolve whether Mr. Nicacio's contention that the conduct of for cause challenges in chambers rather than at the bench is more appropriately analyzed under *Smith*, 181 Wn.2d 508 (holding that reported sidebar conferences, even where they take place outside the courtroom due to problems of courtroom design, do not implicate a defendant's public trial right), or *Love*, 2015 WL 4366419 (holding that the making of challenges for cause implicate a defendant's public trial right but there is no "closure" if the lawyers are in the courtroom and can be observed).

---

[2] The court asked those in attendance at Mr. Applegate's trial whether there was any objection to private questioning of a juror and mentioned *Bone-Club*. The State voiced concern that Mr. Applegate had not stated whether he objected. The lead opinion in *Frawley* addresses what happened next:

> The court then asked if Applegate had any objections. Initially, Applegate's attorney stated that he had no objection, but the court sought clarification that Applegate himself rather than just his counsel did not object. Defense counsel then had a brief sidebar with Applegate and returned on the record to state, "I have talked it over with Mr. Applegate. He has no objection . . . to going back into chambers and asking these questions without the public hearing."

*Frawley*, 181 Wn.2d at 458.

No. 25999-4-III
*State v. Nicacio*

We vacate the conviction and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Fearing, J.