Lawrence-Berrey, A.C. J.
¶ 1 Ralph Whitlock and David Johnson appeal their bench trial convictions for first degree burglary and first degree robbery, including a firearm enhancement. We asked for supplemental briefing on whether the trial court’s decision to recess court and go into chambers to hear argument and rule on an evidentiary objection violated the defendants’ public trial rights. We hold that the defendants’ public trial rights were implicated by the in-chambers evidentiary argument and ruling. We further hold that the in-chambers argument and ruling was a closure and the trial court’s failure to explicitly or implicitly weigh the Bone-Club[1] factors constitutes structural error that is presumed prejudicial. We, therefore, reverse the convictions and remand for a new trial.
FACTS
¶2 In June 2014, Mr. Whitlock and Mr. Johnson entered Tonya Routt’s house, refused to leave when requested, and used a gun as a threat of force to obtain and depart with personal property belonging to Ms. Routt. The State charged the men with first degree burglary and first degree robbery, including firearm enhancements. The cases were consolidated and tried to the bench.
¶3 During trial, counsel for Mr. Johnson attempted to cross-examine a witness on whether she had previously served as a confidential informant. The State objected and *749 requested a sidebar. The trial court chose instead to recess the trial and discuss the evidentiary objection with counsel in chambers. Neither defendant objected to this procedure. Trial thereafter resumed, and counsel for Mr. Johnson asked the witness questions not related to the issue discussed in chambers.
¶4 At the end of the morning testimony, the trial court asked each attorney to place on the record what was discussed earlier in chambers. The State mentioned its concerns about requiring the witness to disclose whether she had served as an informant, explained why it believed the line of questioning was not relevant, and summarized the trial court’s ruling made in chambers. Counsel for Mr. Johnson mentioned why he believed the line of questioning was relevant and added that the trial court’s ruling allowed him to explore the subject through other witnesses. Counsel for Mr. Whitlock agreed with the prior summaries and also added that the trial court discussed other impeachment approaches in chambers.
¶5 After hearing all the evidence and closing arguments, the trial court found the defendants guilty of first degree burglary and first degree robbery, including the charged firearm enhancement. The defendants filed separate timely appeals that we consolidated.
¶6 Our review of the briefs and the record resulted in us directing the parties to submit briefing on the obvious but overlooked public trial issue. Because that issue is disposi-tive, we do not address the defendants’ other contentions.
ANALYSIS
A. Consideration of Public. Trial Issue To Properly Decide Case
¶7 RAP 12.1(a) sets forth the general rule that an appellate court will decide the case only on the basis of *750 issues set forth by the parties in their briefs. RAP 12.1(b) sets forth the exception:
If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.
¶8 There are two reasons, consistent with the above standard, to address the public trial issue. First and foremost, the public trial right is so weighty that its violation is considered structural error. State v. Wise, 176 Wn.2d 1, 13, 288 P.3d 1113 (2012). “Where there is structural error ‘a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.’ ” Id. at 14 (internal quotation marks omitted) (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Rehnquist, C.J., majority opinion)). Second, the in-chambers conference occurred in December 2014, so the trial court had the benefit of Wise, which forewarns trial courts against conducting any portion of the trial in chambers.
B. Public. Trial Right
 ¶9 Defendants have a constitutional right to a public trial. U.S. Const, amend. VI; Const, art. I, § 22. A violation of the public trial right can be raised for the first time on appeal. Wise, 176 Wn.2d at 9. Failure to object at trial does not constitute a waiver of a defendant’s public trial right. State v. Shearer, 181 Wn.2d 564, 569, 334 P.3d 1078 (2014) (plurality opinion). Violation of a defendant’s public trial right is a question of law reviewed de novo. Wise, 176 Wn.2d at 9 (quoting State v. Easterling, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006)).
 ¶10 The right to a public trial is not absolute. Shearer, 181 Wn.2d at 569. Competing rights and interests *751 often require trial courts to limit public access to a trial. Id. Trial courts assess these competing interests by using the five factor analysis articulated in Bone-Club.[2] A trial court must consider the five Bone-Club factors on the record before closing the courtroom. Wise, 176 Wn.2d at 10. Closing the courtroom without considering the Bone-Club factors is structural error and is presumed to be prejudicial. Shearer, 181 Wn.2d at 569.
¶ 11 The first step in analyzing whether a defendant’s right to a public trial has been violated is to inquire whether the court proceeding implicated the right. State v. Smith, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). If the public trial right is implicated, the second step inquires whether there was a closure, and the third step inquires whether the closure was justified. Id. (quoting State v. Sublett, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)).
1. Does the proceeding implicate the public trial right?
¶12 The Washington Supreme Court has adopted the “experience and logic” test developed by the United States Supreme Court to determine if a court proceeding implicates the public trial right. Sublett, 176 Wn.2d at 72-75 (plurality opinion). The “experience prong” asks “ ‘whether the place and process have historically been open to the *752 press and general public.’ ” Id. at 73 (quoting Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The “logic prong” asks “ ‘whether public access plays a significant positive role in the functioning of the particular process in question.’ ” Id. (quoting Press-Enter., 478 U.S. at 8). If both questions are answered yes, then the court proceeding implicates the public trial right. Id. The Washington Supreme Court has held that sidebar conferences do not implicate the public trial right. Smith, 181 Wn.2d at 511.
a. Smith is not dispositive
¶13 The State asserts that Smith controls the outcome of this case. In Smith, the trial court conducted 13 sidebar conferences during the jury trial to consider evidentiary objections. Id. at 512. The Cowlitz County courtroom has a peculiar layout that makes it difficult to have a traditional sidebar discussion outside of the jury’s hearing. Id. To prevent the jury from hearing potentially prejudicial information, sidebars occur in a hallway outside of the courtroom. Id. The sidebar conference is videotaped and recorded and is, thus, part of the trial court record. Id. The Smith court applied the “experience and logic” test and held that sidebar conferences do not implicate the defendant’s public trial right. Id. at 515-19. Especially pertinent to this case, the Smith court held, “[A] sidebar conference, even if held outside the courtroom, does not implicate Washington’s public trial right.” Id. at 519 (emphasis added).
¶14 But reaching the conclusion urged by the State is not so simple. The Smith court explicitly limited its holdings to sidebars in fact.
We caution that merely characterizing something as a “sidebar” does not make it so. To avoid, implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and. must either be on the record or be promptly *753 memorialized, in the record. Whether the event in question is actually a sidebar is part of the experience prong inquiry ....
Id. at 516 n.10 (emphasis added).
¶15 We determine that the evidentiary conference in this case was not a sidebar as contemplated by the Smith court. The Smith court explained that a sidebar is a method used by a trial judge to hear evidentiary objections so as to avoid delay caused by sending the jury to and from the jury room, often located some distance from the courtroom. Id. at 515 (quoting In re Det. of Ticeson, 159 Wn. App. 374, 386 n.38, 246 P.3d 550 (2011)). The hallway conference in Smith was a sidebar because it was the most expedient method for resolving evidentiary objections, given the courtroom’s peculiar layout that allowed a jury to hear a traditional sidebar.
¶16 But here, the trial was to the bench. There was no expediency justification for holding an evidentiary conference outside the courtroom. Rather, the trial court’s decision to recess court and hold an in-chambers argument and ruling actually disrupted the expedient flow of the trial.
¶17 Moreover, the in-chambers argument and ruling were neither recorded nor promptly memorialized on the record. Rather, quite some time passed between when the in-chambers argument and ruling concluded and when the in-chambers argument and ruling were placed on the record.[3] We conclude that Smith does not control the outcome of this case.
b. Application of the “experience and logic” test
¶18 The experience prong asks “ ‘whether the place and process have historically been open to the press and general public.’” Sublett, 176 Wn.2d at 73 (quoting Press-Enter., 478 U.S. at 8). Evidentiary arguments and rulings have always occurred in open court, although sometimes in hushed *754 sidebar tones. There rarely are good reasons for private evidentiary conferences, absent compelling factors that could be weighed in a Bone-Club analysis. Any other reason to conduct a private evidentiary conference would be based on mere convenience and, thus, would not be appropriate. State v. Frawley, 181 Wn.2d 452, 460, 334 P.3d 1022 (2014) (plurality opinion).
¶19 The logic prong asks “ ‘whether public access plays a significant positive role in the functioning of the particular process in question.’” Sublett, 176 Wn.2d at 73 (quoting Press-Enter., 478 U.S. at 8). Smith held that the logic prong did not implicate the defendant’s public trial rights because (1) forcing a jury in and out of court every time an evidentiary objection is made would be problematic, (2) traditional sidebars did not invoke concerns of perjury, transparency, or the appearance of fairness, especially where the communications were contemporaneously memorialized and recorded, and (3) evidentiary rulings are the province of the trial court, and laypersons do not understand the intricate hearsay rules. Smith, 181 Wn.2d at 518-19. Here, however, jury expediency was not a concern, nor was this a traditional sidebar, nor was the discussion and ruling contemporaneously memorialized or recorded.
¶20 Hearing and ruling on an evidentiary objection in chambers is different from hearing and ruling on an evidentiary objection in open court—even in hushed sidebar voices. In chambers, the public cannot watch to ensure that the adversarial process is in fact adversarial. Especially here, where no jury was present and there was no recording of what was said in chambers, logic dictates there is little to gain and much to lose by excluding the public from an evidentiary conference. We hold that hearing and ruling on an evidentiary objection in chambers implicates the defendants’ public trial right.
2. Was there a closure?
¶21 When a trial court conducts a court proceeding in chambers, thus causing the public to be excluded, there is *755 a closure. Frawley, 181 Wn.2d at 459-60; Wise, 176 Wn.2d at 11-13.
3. Was the closure justified?
¶22 “A closure unaccompanied by a Bone-Club analysis on the record will almost never be considered justified.” Smith, 181 Wn.2d at 520. “When a court fails to conduct an express Bone-Club analysis, a reviewing court may examine the record to determine if the trial court effectively weighed the defendant’s public trial right against other compelling interests.” Id. Here, the trial court did not explicitly or implicitly weigh the Bone-Club factors. Instead, the State asked for a sidebar and the trial court chose to address the evidentiary objection in chambers. We conclude the closure was not justified.
CONCLUSION
¶23 Hearing argument and ruling on an evidentiary objection in chambers implicates a defendant’s public trial right. Moreover, conducting such a conference in chambers constitutes a closure. The trial court’s decision to hear argument and rule on an evidentiary objection in chambers without explicitly or implicitly weighing the Bone-Club factors is, by binding precedent, structural error and is presumed prejudicial. We, therefore, are constrained to reverse both convictions and remand for a new trial.
¶24 Reversed and remanded.
Pennell, J., concurs.

 State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

 The five factors are:
“1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused’s right to a fair trial, the proponent must show a ‘serious and imminent threat’ to that right.
“2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
“3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
“4. The court must weigh the competing interests of the proponent of closure and the public.
“5. The order must be no broader in its application or duration than necessary to serve its purpose.”
Bone-Club, 128 Wn.2d at 258-59 (alteration in original) (quoting Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

 The report of proceedings (RP) does not reflect the time the in-chambers hearing concluded and the time the argument and ruling were placed on the record. But we note that the former occurred at RP p. 339, and the latter occurred at RP pp. 424-27.