

This opinion was filed for record

at 8:00 am on June 15, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Petitioner,<br><br>v.<br><br>RALPH E. WHITLOCK,<br><br>        Respondent. | NO. 93685-4<br><br>EN BANC<br><br><br>Filed    JUN 1 5 2017 |
| STATE OF WASHINGTON,<br><br>        Petitioner,<br><br>v.<br><br>DAVID R. JOHNSON,<br><br>        Respondent. | |

GORDON McCLOUD, J.—In *State v. Smith*, this court held that the constitutional right to an open courtroom did not require trial courts to invite the public to attend sidebars. 181 Wn.2d 508, 334 P.3d 1049 (2014). It defined "[p]roper sidebars" as those occurring at sidebar or its equivalent and involving

"mundane issues implicating little public interest." *Id.* at 515-17 & n.10 (citing *State v. Wise*, 176 Wn.2d 1, 5, 288 P.3d 1113 (2012)). Typical examples of such mundane issues are scheduling, housekeeping, and decorum.

In this case, however, the topic of discussion was the proper extent of cross-examination of a confidential informant who was the State's key witness and the location of the discussion was not at sidebar but in the judge's chambers. In fact, the trial court rejected the State's request to address its objection to the scope of cross-examination at sidebar. Instead, the court adjourned the bench trial proceedings, called counsel into chambers, and discussed that critically important and factually complicated issue behind closed doors. The Court of Appeals ruled, in a two to one decision, that this procedure violated the right to an open courtroom and conflicted with *Smith*. *State v. Whitlock*, 195 Wn. App. 745, 749, 755, 381 P.3d 1250 (2016).

The State sought review, which we granted. *State v. Whitlock*, 187 Wn.2d 1002, 386 P.3d 1080 (2017). We affirm the Court of Appeals and reaffirm our adherence to *Smith*.

FACTS

Ralph Whitlock and David Johnson were each charged with multiple counts of robbery and burglary, with firearm and deadly weapon enhancements, arising

from a single incident.[1] Whitlock and Johnson waived their jury trial right, and the case was tried to the bench.

The State's theory was that Whitlock and Johnson arrived at the home of an acquaintance, Tonya Routt; that they were armed with a crowbar and a pistol; that they forced another person at the house, Crista Ansel, to show them around so that they could locate valuables to steal; and that Whitlock and Johnson ultimately stole a television, a safe containing money and drugs, and other items.

The defense did not deny that Whitlock and Johnson were present at the scene of the robbery. Instead, they sought to undermine the credibility of the State's witnesses and pin the robbery on Ansel. In opening statements, for example, counsel for both defendants impugned Ansel's credibility and singled her out as the only witness who would testify that the defendants committed an assault or carried any weapon.[2]

There was certainly material for the defense to use in pursuing this theory. The trial testimony of several of the State's witnesses conflicted with statements

---

[1] Clerk's Papers (CP) (Whitlock) at 60-61; CP (Johnson) at 83-84. Whitlock was also charged with two counts of bribing a witness. CP (Whitlock) at 62-63.

[2] This was not an entirely accurate forecast of the testimony. In fact, a witness not present during the robbery testified that she received texts from several victims immediately afterward, stating that a gun was present, Tr. of Proceedings (TP) (Dec. 8, 2014) at 233-34; another witness testified that he saw Johnson leaving the scene of the robbery holding a pistol, TP (Dec. 9, 2014) at 385; and a third witness testified that Ansel told him, at the scene while the robbery was occurring in another room, that the defendants were armed with a crowbar and a gun, TP (Dec. 10, 2014) at 614.

those witnesses made to law enforcement officers after the robbery. The State attributed these conflicts to intimidation or bribery by Whitlock; the defense attributed the conflicts to either coercion by the police or drug-induced confusion.

But the defense focused most intensely and consistently on impeaching Ansel. Ansel's lack of credibility was a predominant defense theme throughout trial.

When Ansel took the stand, she testified that she and six other people were present in the home when the defendants showed up with the crowbar and pistol. She stated that one person at the house immediately began packing to leave with her young daughter, and that another person there was very frightened. Ansel acknowledged that she was not frightened because Whitlock was like a brother to her. But she testified that she led Whitlock around the house, showing him which rooms contained items he was looking for, opening doors for him to prevent him from breaking them down, and asking him not to wake sleeping children. At some point, Ansel testified, Whitlock accidentally struck her in the face with his elbow and apologized. She said that he told her not to do anything stupid and eventually locked her in a bedroom. She also testified that after the robbery, Whitlock's girlfriend threatened her and urged her to leave town.

On cross-examination, defense counsel asked Ansel if the reason she refrained from calling the police on the night of the robbery was that she had a warrant out for her arrest. Ansel responded that she would not have called the police in any event.

4

Defense counsel then said, "Okay, but you do have dealings with the police, don't you?" Tr. of Proceedings (TP) (Dec. 9, 2014) at 338-39. The State objected. It asked for a sidebar.

The court called a recess. But it did not hold a sidebar. Instead, despite the fact that this was a bench trial, it called counsel into chambers and met with them there, with no reporter—or defendants—present. The minutes indicate that this recess began at 10:13 a.m. and lasted 10 minutes. Nobody objected.

When open court proceedings resumed, defense cross-examination continued. But defense counsel did not ask any questions about Ansel's dealings with the police. Ansel then finished testifying, one other witness for the State testified, and the court announced it would take a recess for lunch.

Just before that recess, the court and counsel placed on the record a description of the in-chambers proceeding. The minutes indicate that this memorialization occurred between 12:04 and 12:09 p.m. The defendants were not present when this record was made; they had already been taken back to jail. The prosecutor explained that he had objected to the defense's line of cross-examination because he viewed it as both irrelevant and an attempt to intimidate Ansel by revealing she was a police informant in front of the defendants. The prosecutor also summarized that the trial court had ruled in the State's favor in chambers: "The Court, uh, agreed with the State in Chambers that, uh, that there was no, uh, material relevance or, uh, towards

her credibility on that, on those issues and so the State's interests were, outweighed the, uh, the Defendants' interests in obtaining or, or listening to this testimony." *Id.* at 425. Defense counsel then explained that he had advanced two bases for questioning Ansel on her "relationship with the police": first, to explain why Ansel would talk with one particular detective even though (according to the defense theory) she was "more afraid of the police than she [was] of Mr. Johnson and Mr. Whitlock"; and second, to set the stage for arguing that Whitlock and Johnson would be unlikely to commit a crime in a home where a known police informant was present. *Id.* at 425-26. Defense counsel also explained that two decisions resulting from the in-chambers proceeding had "adequately addresse[d] the Defenses' interests": first, the State promised that it would not question Ansel about her discussions with any particular detective; and second, the court ruled that Whitlock and Johnson could testify about their suspicions that Ansel was an informant. *Id.* at 426. Finally, the court admonished counsel to maintain decorum and show respect and deference to the bench, and counsel apologized. (This was apparently a reference to an earlier exchange.) *Id.* at 426-27.

When court reconvened, the defense presented its case. Johnson testified that he suspected Ansel and some of the other State's witnesses were police informants. Counsel did not question Johnson further about this suspicion, so that testimony was limited to Johnson's single statement. All of the eyewitness defense testimony,

6

including Johnson's, placed Johnson and Whitlock at the scene of the robbery. Johnson testified that he and Whitlock were framed; one other defense witness testified that he saw Johnson and Whitlock at the scene right before the robbery occurred but did not actually see them take any property.

In closing, the defense argued that Ansel was the real perpetrator of the robbery and repeated the assertion that the State's case rested entirely on the credibility of her testimony. The State responded by pointing out all of the other evidence that corroborated Ansel's account.

The court convicted Whitlock and Johnson of first degree burglary and first degree robbery, all with firearm enhancements, and sentenced each man to 180 months. Clerk's Papers (CP) (Whitlock) at 1-77; CP (Johnson) at 98-103.

## PROCEDURAL HISTORY

Whitlock and Johnson appealed their convictions on grounds unrelated to the in-chambers proceeding. The Court of Appeals, however, called for supplemental briefing on the public trial issue. *Whitlock*, 195 Wn. App. at 749 ("Our review of the briefs and the record resulted in us directing the parties to submit briefing on the obvious but overlooked public trial issue.").[3] The court then held, in a two to one

---

[3] The State asserts that the Court of Appeals raised the public trial issue sua sponte. But Whitlock filed a pro se "Statement of Additional Grounds for Review" (Statement), which identified the fact that the in-chambers proceeding had occurred and raised a right-to-presence claim. Statement at 1, *State v. Whitlock*, No. 33073-7-III ("Were the defendant's Constitutionally protected due process rights violated when the trial

7

decision, that the in-chambers proceeding violated the defendants' right to a public trial. It reversed the convictions. *Id.* at 755; *see id.* at 756-62 (Korsmo, J., dissenting).

The majority[4] first explained that the closure was not permitted under our decision in *Smith*, which held that "[p]roper sidebars," involving "mundane issues implicating little public interest," do not trigger the public trial right under the experience and logic test. 181 Wn.2d at 515-17; *Whitlock*, 195 Wn. App. at 752-53. The majority reasoned that *Smith* permits sidebars only when they are (1) "'limited in content to their traditional subject areas,'" (2) necessary to "'avoid disrupting the flow of trial,'" and (3) contemporaneously transcribed or "'promptly memorialized in the record.'" *Whitlock*, 195 Wn. App. at 752-53 (emphasis omitted) (quoting *Smith*, 181 Wn.2d at 516 n.10). The majority concluded that the in-chambers conference here failed the second and third criteria: it was not necessary to avoid a

---

proceedings were held without his presence?"). In late January 2016, the Court of Appeals rejected that pro se Statement for filing, pursuant to *State v. Romero*, 95 Wn. App. 323, 975 P.2d 564 (1999). Letter from Renee S. Townsley, Clerk/Adm'r, to Ralph Whitlock, Appellant (Jan. 25, 2016) (on file with court). But three months later, the court sent counsel a letter directing them to "provide supplemental briefing on the issue raised by Mr. Whitlock in his pro se [Statement] that the trial court heard argument and ruled upon an evidentiary objection in chambers and without him present." Letter from Renee S. Townsley, Clerk/Adm'r, to counsel (Apr. 22, 2016) (on file with court). The letter specifically directed counsel to brief both the right to presence and the right to a public trial. *Id.*

[4] Judge Pennell joined the majority in full but also wrote a separate concurrence. *Whitlock*, 195 Wn. App. at 755-58 (Pennell, J., concurring).

disruption because the trial was to the bench (so there was no jury to accommodate), and it was neither recorded nor promptly memorialized because there were almost 100 pages of transcripts between the sidebar and the memorialization. *Id.* at 753. The majority then applied the experience and logic test[5] and concluded that the in-chambers proceeding violated the defendants' right to a public trial. *Id.* at 754.

We granted the State's petition for review. *Whitlock*, 187 Wn.2d 1002.

## ANALYSIS

A criminal defendant has a right to a public trial under both the United States Constitution and the Washington State Constitution. *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "The public trial right is found in two sections of the Washington Constitution: article I, section 22, which guarantees a criminal defendant a right to a 'public trial by an impartial jury,' and article I, section 10, which guarantees that '[j]ustice in all cases shall be administered openly.'" *State v. Frawley*, 181 Wn.2d 452, 458-59, 334 P.3d 1022 (2014) (plurality opinion) (alteration in original).

---

[5] This court adopted the experience and logic test in *State v. Sublett*, 176 Wn.2d 58, 72, 292 P.3d 715 (2012) (plurality opinion). The test derives from the United States Supreme Court's decision in *Press-Enterprise Co. v. Superior Court*, which held that a qualified right of public access attaches to proceedings that (1) "have historically been open to the press and general public" and (2) function properly, or better, *because* they are public. 478 U.S. 1, 7-8, 106 S. Ct. 2735, 92 L. E. 2d 1 (1986).

Whether a defendant's public trial right has been violated is a question of law reviewed de novo. *Wise*, 176 Wn.2d at 9 (quoting *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006)). To answer that question, the court engages in a three-part inquiry: "(1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) if so, was the closure justified?" *Smith*, 181 Wn.2d at 521 (citing *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)).

In this case, the second and third questions are easy to answer. The proceeding at issue in this case was certainly a "closure": the proceeding occurred in the judge's chambers, and that is a private and closed setting. *See Frawley*, 181 Wn.2d at 459-60 & n.8 (conducting trial court proceedings in-chambers so that the public is excluded constitutes a closure). And the trial court did not conduct a *Bone-Club* analysis,[6] so the closure was not justified. *Smith*, 181 Wn.2d at 520 ("[a] closure

---

[6] *State v. Bone Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Under *Bone-Club*, the trial court may not close the courtroom unless it "perform[s] a weighing test consisting of five criteria":

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right."

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure."

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests."

unaccompanied by a *Bone-Club* analysis on the record will almost never be considered justified"). *See Frawley*, 181 Wn.2d at 460 ("The articulation of a compelling interest [under the *Bone-Club* analysis] ensures that court proceedings are not closed merely for the sake of convenience as a matter of course." (citing *Presley v. Georgia*, 558 U.S. 209, 215, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010))). We therefore turn to the first question: whether the in-chambers proceeding at issue in this case implicated the public trial right.

To determine whether the public trial right attaches to a particular proceeding, we apply the "experience and logic" test. *Smith*, 181 Wn.2d at 511 (citing *Sublett*, 176 Wn.2d at 73). Under the experience prong, we consider whether the proceeding at issue has historically been open to the public. *In re Det. of Morgan*, 180 Wn.2d 312, 325, 330 P.3d 774 (2014) (citing *Sublett*, 173 Wn.2d at 73). Under the logic prong, we ask """"whether public access plays a significant positive role in the functioning of the particular process in question."""" *Id.* at 325-26 (quoting *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.

---

"4. The court must weigh the competing interests of the proponent of closure and the public."

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Id.* (second alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

Ct. 2735, 92 L. Ed. 2d 1 (1986) (*Press* II))). If both prongs are satisfied, the public trial right attaches. *Morgan*, 180 Wn.2d at 325 (citing *Sublett*, 176 Wn.2d at 73); *Press* II, 478 U.S. at 9. The guiding principle is "'whether openness will "enhance[] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.""" *Smith*, 181 Wn.2d at 514-15 (alteration in original) (quoting *Sublett*, 176 Wn.2d at 75 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (*Press* I))).

*Smith* has already answered that question with regard to the proceedings at issue here. In *Smith*, which we decided before the *Whitlock/Johnson* trial, we held that sidebars do not implicate the public trial right under the experience and logic test "because [sidebars] have not historically been open to the public and because allowing public access would play no positive role in the proceeding[s]." 181 Wn.2d at 511.

But we limited that holding to *sidebars*. We considered whether sidebar conferences on evidentiary matters held in a hallway outside the courtroom—solely because of the "peculiar layout" of the courthouse making conferences at the bench impractical but with video and audio recording equipping that outside hallway for just such sidebars—implicate the public trial right. *Id.* at 512. We ruled that "[p]roper sidebars" do not meet either prong of the experience and logic test and therefore do not implicate the public trial right at all. *Id.* at 516-19 & n.10. We

12

defined "[p]roper sidebars" as proceedings that "deal with the mundane issues implicating little public interest[,] . . . done only to avoid disrupting the flow of trial, and . . . either . . . on the record or . . . promptly memorialized in the record." *Id.* at 516 & n.10 (citing *Wise*, 176 Wn.2d at 5). We also held that the particular proceedings at issue in that case—all addressing legal challenges and evidentiary rulings that were so devoted to legal "complexities" as to be "practically a foreign language"—were proper sidebars. *Id.* at 518-19; *see id.* at 539-41 (Owens, J., dissenting).

Under *Smith*, the in-chambers proceeding in this case was definitely not a "[p]roper sidebar." *Id.* at 516.

First, it occurred in chambers. Chambers are, by definition, closed to the public. *Frawley*, 181 Wn.2d at 459-60. So the location of the proceeding in this case cannot be considered the location of a sidebar.

The State implicitly admits this by arguing in this court that such a complete closure was necessary to avoid publicly exposing Ansel as a police informant. Suppl. Br. of Pet'r at 11. That, however, simply proves that this was not a regular sidebar but an intentional courtroom closure to exclude the public.

Second, the in-chambers proceeding was not recorded or promptly memorialized. The State argues that the in-chambers proceeding was consistent with *Smith* because it was eventually memorialized. But there was no reason for any

delay in memorialization at all here. As discussed, this was a bench trial. The entire objection could have been argued on the record at any time with no inconvenience to anyone.

Finally, the State argues that the in-chambers proceeding resolved only legal issues, as opposed to factual ones, and was therefore permissible under *Smith*. But *Smith* did not adopt a strict "legal-factual distinction" for determining whether a proceeding implicates the public trial right, 181 Wn.2d at 514 (citing *Sublett*, 176 Wn.2d at 73), much less for determining whether a chambers discussion can be recharacterized as a midtrial sidebar. Further, the objection argued in chambers in this case was not purely technical or legalistic. It was about a matter easily accessible to the public: informants and their motives to curry favor with authority. As the State itself argued to this court, the issue was "wrapped in a very complicated *fact pattern* that would not be obvious to the trial court without explanation." Suppl. Br. of Pet'r at 11-12 (emphasis added).[7] "Fact patterns" are factual.

---

[7] The State also cites precedent holding that a defendant who seeks to compel the disclosure of an informant's identity must make "a compelling showing of necessity to overcome the State's interest" in protecting that information. Suppl. Br. of Pet'r at 12 (citing *Roviaro v. United States*, 353 U.S. 53, 60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)). In 1978, this court observed that the proper way for the trial court to balance those interests was to "hold an in camera session at which the judge hears the informer's testimony and applies the *Roviaro* standard." *State v. Harris*, 91 Wn.2d 145, 150, 588 P.2d 720 (1978). Here, the State argues that it would be illogical to allow such in-camera proceedings but disallow the in-chambers proceeding in this case. Suppl. Br. of Pet'r at 12. This argument is unpersuasive because our 1978 *Harris* decision does not address the public trial right at all. It predates *Bone-Club*, in which we articulated the five steps that a trial court must take

For these reasons, the Court of Appeals properly determined that the in-chambers proceeding at issue in this case was not a "[p]roper sidebar." *Smith*, 181 Wn.2d at 516. Following *Smith*, the in-chambers proceeding implicated the defendants' right to a public trial.

## CONCLUSION

The in-chambers proceeding in this case was not a sidebar, constituted a courtroom closure, and occurred without the justification that might be provided by a *Bone-Club* analysis. The Court of Appeals was therefore correct in ruling that this courtroom closure constituted a structural error requiring reversal.

We therefore affirm.

---

before closing a proceeding, to which the right to an open courtroom attaches, in a criminal trial.

No. 93685-4

_(signature)_ McCloud, J.

WE CONCUR:

_(signature)_ Fairhurst, C.J.

_(signature)_ Johnson, J.

_(signature)_ Madsen, J.

_(signature)_ Stephens, J.

_(signature)_ González, J.

_(signature)_ Wiggins, J.

_(signature)_ Owens, J.

_(signature)_ Yu, J.

16