# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74539-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEMARIO SAMUEL ROBERSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 14, 2018 |

TRICKEY, J. — A jury convicted Demario Roberson of felony violation of a court order and assault in the second degree. He argues that the court was required to vacate the assault conviction to avoid a double jeopardy violation. But there was no double jeopardy violation. The court properly entered judgment on the lesser included offense of misdemeanor violation of a court order because assault in the second degree cannot elevate a violation of a court order to a felony under RCW 26.50.110(4). Roberson also challenges the court's admission of evidence of a prior assault against the same victim and alleges that the trial court conducted three sidebar conferences in violation of his right to a public trial. Finding no error, we affirm.

## FACTS

Demario Roberson and Krystal Rodriguez met and became a couple in 2007, when Rodriguez was 17 years old. In early 2008, Rodriguez moved into Roberson's family's home.

Some months later, in May 2008, Rodriguez and Roberson had an argument that led to a domestic violence charge. They were visiting some friends and Rodriguez wanted to leave. She waited in the car for Roberson but then decided to take the bus and leave on her own. Roberson and Rodriguez were arguing and Rodriguez was crying. When Rodriguez tried to walk away, Roberson grabbed her hand. A man driving by in a truck observed the struggle, stopped, and confronted Roberson. Another eyewitness persuaded Rodriguez to get into her car and called 911. When he heard sirens approaching, Roberson left. He pleaded guilty to assault. On May 14, 2008, the court entered a no-contact order prohibiting contact between Roberson and Rodriguez in connection with the charge.

The convictions at issue in this appeal stem from an incident that took place on September 22, 2008. On that day, Roberson took Rodriguez to enroll in school. Roberson drove Rodriguez in his mother's car, which he often drove, a lavender PT Cruiser. They were unable to complete the enrollment, however, because they could not locate the address after spending more than an hour driving around.

Eventually, Roberson pulled into a cul de sac in Skyway, south of Seattle, where he used to live. There were two houses in the cul de sac. Monica Green and her family lived in one of the houses. Teresa Mugamuga lived with her family in the upper unit of the house next door. Roberson and his family previously lived in one of the rental units and a family friend of Roberson's had

2

also lived there until a few weeks earlier. Both Green and Mugamuga were familiar with Roberson from when his family lived there.

Mugamuga was watching television facing the window when she heard a car pull up quickly onto the gravel parking area. She recognized the PT cruiser. Roberson was gesticulating and it appeared that he was arguing with his female passenger. Mugamuga then saw Roberson punch the female in the face with a closed fist. The passenger's head jerked back and she covered her face with her hands. Roberson threw her a towel.

Green also noticed Roberson's car and went out to investigate after her sons, who had been playing outside, came inside and told her that a woman in the car was bleeding. Green went to Roberson's car and heard him yelling at Rodriguez, telling her she was "okay" and to "clean herself up."[1] Rodriguez was crying and holding a towel over her bloody face. Green demanded to know what had happened and accused Roberson of hitting Rodriguez. Roberson said that "nothing" happened, "everything's fine," and "it's cool," and eventually told her to mind her own business.[2] Green directly asked Rodriguez what happened and she did not answer.

The argument between Roberson and Green became heated. Green's husband came outside and he and Green got Rodriguez out of the car. Rodriguez was crying, shaking, and holding her face. Green told Rodriguez to come inside the house and that she would help her. Rodriguez responded, "you

---

[1] 4 Report of Proceedings (RP) at 671.
[2] 4 RP at 672.

3

don't understand," and explained, "I live with him, I have to go."[3]  Meanwhile, Roberson ordered Rodriguez to get back in the car and threatened Green and her husband that he would return with a gun.  Rodriguez got back into the car, Green called 911, and Roberson sped off.

King County sheriff's deputies responded and eventually determined that Rodriguez might be at Roberson's home in Seattle.  When deputies went to the house, Roberson's mother told them that neither Roberson nor Rodriguez was home.  Concerned about Rodriguez's safety, the deputies entered the home over Roberson's mother's objection.  Inside, the deputies came upon a locked bedroom door.  Roberson's mother denied that Rodriguez was in the room and said that she did not have a key.  No one responded when the deputies knocked on the bedroom door.  They kicked down the door to find Rodriguez standing by the bed holding a towel to her bruised and swollen face.

The deputies escorted Rodriguez from the house.  They insisted that medics examine her, but she refused to go to the hospital.  Rodriguez told one of the deputies that the injury occurred when Roberson slammed on the brakes while driving and that she hit her face on the dashboard of the car.  The deputy took Rodriguez to her mother's house.  Eventually a physician examined Rodriguez and determined that she had a nasal fracture.

The State charged Roberson with felony violation of a court order, assault in the second degree, kidnapping in the second degree, and felony harassment.

At the 2009 trial, Rodriguez was five months pregnant with Roberson's child.  Rodriguez testified and denied that Roberson hit her and said her injury

---

[3] 4 RP at 693.

was caused by an accidental traffic-related incident. Her description of the accident was different from the account she initially gave to the deputy. She said she loved Roberson and wanted to marry him. In his testimony, Roberson also said that Rodriguez hit her face on the dashboard when he had to slam on the brakes to avoid hitting a car in front of him.

The jury convicted Roberson of felony violation of a court order and assault in the second degree, but acquitted him of the kidnapping and harassment charges. At sentencing, the State proposed that the court enter judgment for a misdemeanor violation of a court order because the statute defining the crime of felony violation of a court order, RCW 26.50.110(4), precluded a felony conviction when the defendant was also convicted of second degree assault. Defense counsel did not object.

In March 2009, the court entered judgment on a misdemeanor violation of a court order and suspended the sentence. The court imposed a standard range sentence on Roberson's conviction of assault in the second degree, and after awarding credit for time served, ordered his immediate release.

Roberson appeals.[4]

## ANALYSIS

### I. Double Jeopardy

Roberson contends that his convictions of second degree assault and felony violation of a no-contact order violated double jeopardy. Therefore, he claims that instead of entering judgment on the misdemeanor offense, the

---

[4] Roberson filed an untimely notice of appeal in January 2016. This court granted Roberson's motion to enlarge the time to appeal under RAP 18.8(b).

sentencing court was required to vacate the lesser conviction, here, the assault conviction. According to Roberson, the court correctly recognized the double jeopardy violation, but failed to properly remedy the error.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution, guarantee that no person shall be subject to multiple prosecutions or punishments for the same offense. State v. Baldwin, 150 Wn.2d 448, 453-54, 78 P.3d 1005 (2003). But if the legislature authorizes cumulative punishments for both offenses, double jeopardy is not offended. State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). We review de novo whether the legislature intended to punish two crimes separately. Freeman, 153 Wn.2d at 770.

In State v. Moreno, 132 Wn. App. 663, 668-71, 132 P.3d 1137 (2006), and State v. Leming, 133 Wn. App. 875, 886-87, 138 P.3d 1095 (2006), this court held that double jeopardy is not offended by convictions of both assault and felony violation of a court order, even if the two convictions were based on the same evidence, because the legislature intended to punish the crimes separately. We derived the legislature's intent from the following: (1) the crime of assault is located in the Washington Criminal Code, in chapter 9A.36 RCW, whereas violation of a no-contact order is located in Title 26, Domestic Relations, and codified in chapter 26.50 RCW, the Domestic Violence Protection Act; (2) RCW 26.50.210 provides that actions under chapter 26.50 RCW are "in addition to other civil or criminal remedies;" and (3) the statutes criminalizing assault and violation of a domestic violence court order serve different purposes. Moreno,

6

132 Wn. App. at 669-70; Leming, 133 Wn. App. at 886-87. Accordingly, Roberson's convictions of assault and felony violation of a court order did not violate double jeopardy.

Contrary to Roberson's argument, the record indicates that the court entered judgment on the misdemeanor offense, not to avoid a double jeopardy violation, but because the applicable statute defining felony violation of a court order, RCW 26.50.110(4), precludes the use of second degree assault to elevate a misdemeanor violation of a court order to a felony. See State v. Ward, 148 Wn.2d 803, 810-12, 64 P.3d 640 (2003); State v. Azpitarte, 140 Wn.2d 138, 142, 995 P.2d 31 (2000).

Under RCW 26.50.110(1)(a), a knowing violation of a protection or no-contact order is a gross misdemeanor except as provided in subsections (4) and (5). Applicable here, RCW 26.50.110(4) provides:

> Any assault that is a violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

Because Roberson's second degree assault of Rodriguez was the basis for elevating his violation of a court order to a felony, the felony conviction violated RCW 26.50.110(4). And given that the jury was instructed on, and necessarily found the elements of, the misdemeanor violation, vacation of the felony conviction and imposition of the lesser included misdemeanor offense was the appropriate remedy. In re Pers. Restraint of Heidari, 174 Wn.2d 288, 292, 274 P.3d 366 (2012) (remand for imposition of judgment on lesser offense is

appropriate where jury was instructed on and found the elements of the lesser offense).

II.     ER 404(b) Evidence

Roberson next claims that the trial court abused its discretion by admitting evidence of the May 2008 domestic violence incident.  We review a court's decision to admit or exclude such evidence for abuse of discretion.  State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).  A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Magers, 164 Wn.2d at 181.

ER 404(b) bars the admission of evidence of prior bad acts for the purpose of proving a person's character and showing that the person acted in conformity with the character.  State v. Gresham, 173 Wn.2d 405, 420-21, 269 P.3d 207 (2012).  But the same evidence may be admissible for another purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice.  Gresham, 173 Wn.2d at 420-21.

Washington courts have admitted prior acts of domestic violence under ER 404(b) for a number of purposes.  For instance, such evidence has been admitted (1) to assist the jury in assessing the credibility of a victim who recants or makes inconsistent statements, (2) to show the reasonableness of a victim's fear where fear is an element of the charged offense, and (3) to explain the victim's delay in reporting an offense.  Magers, 164 Wn.2d at 186 (acts of domestic violence admissible to show victim's reasonable fear and to judge credibility of a recanting victim); State v. Gunderson, 181 Wn.2d 916, 925, 337

P.3d 1090 (2014) (prior acts admissible when "the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events"); State v. Baker, 162 Wn. App. 468, 474-75, 259 P.3d 270 (2011) (prior acts of domestic violence admissible to assist jury in assessing credibility of victim who delays reporting or changes her story).

Roberson claims that the prior incident of domestic violence was not probative of Rodriguez's credibility because she did not recant and the only statement she made to the deputy was consistent with her trial testimony. Roberson argues that as in Gunderson, the evidence of past violence was not admissible because there was no conflict between Rodriguez's testimony and her prior statements, and to the extent that her testimony conflicted with the testimony of others, including Mugamuga and Green, the evidence of prior domestic violence did not help to explain those conflicts.

In Gunderson, the State brought a domestic violence charge against Daniel Gunderson. 181 Wn.2d at 919. At trial, one of the alleged victims testified that no such incident took place. Gunderson, 181 Wn.2d at 920. There was no evidence that the victim sustained any physical injuries and before trial, she was not asked to provide any statement to the police or prosecutor's office. Gunderson, 181 Wn.2d at 920. The State sought to introduce evidence of Gunderson's prior acts of domestic violence against the victim in order to impeach her testimony. Gunderson, 181 Wn.2d at 921. The trial court concluded that the evidence was relevant to the victim's credibility and admitted it. Gunderson, 181 Wn.2d at 921. Our Supreme Court reversed, holding that

9

evidence of prior bad acts is not admissible to impeach a victim's credibility when "there is no evidence of injuries to the alleged victim" and she "neither recants nor contradicts prior statements." Gunderson, 181 Wn.2d at 925. Nor was the evidence of past domestic violence admissible to explain a conflict between the victim's account and "evidence from a different source." Gunderson, 181 Wn.2d at 924.

But, here, there was evidence of physical injuries and trauma. And although Rodriguez was not a recanting witness, her trial testimony that she was involved in a minor car accident was at odds with her statements and conduct at the time of the incident. Gunderson, 181 Wn.2d at 924 n.2, 925; State v. Grant, 83 Wn. App. 98, 106-07, 920 P.2d 609 (1996) (prior assaults admissible to explain victim's "statements and conduct" which might otherwise appear inconsistent with her testimony about the charged assault). When Green demanded to know what had happened immediately following the assault and accused Roberson of hurting Rodriguez, Rodriguez said nothing. Rodriguez did not object or explain when Green became increasingly agitated and, together with her husband, tried to separate her from Roberson. When Green offered her protection and assistance, Rodriguez responded, "you don't understand," "I live with him, I have to go."[5] Shortly after, when the deputy brought Rodriguez to her mother's home and her mother saw her injuries and asked if Roberson "did that to her," Rodriguez told her "nothing happened," and did not mention a traffic accident.[6]

---

[5] 4 RP at 693.
[6] 3 RP at 423.

Rodriguez's trial testimony also differed from her statements to the deputy about the alleged accident in several significant respects. In particular, Rodriguez told the deputy that before the accident occurred, Roberson's sister had punched him and he was angry. She also said that Roberson was driving in reverse, pulling out of his sister's driveway, when he slammed on the brakes. She said she was wearing a seatbelt at the time. However, at trial, Rodriguez denied that Roberson had a fight with his sister or that the accident happened while reversing out of Roberson's sister's driveway. Rodriguez said that Roberson was travelling too fast up a hill and had to slam on the brakes to avoid hitting the car in front of them. Rodriguez said she was not wearing a seatbelt.

Rodriguez's trial testimony was in conflict with her prior statements and conduct and not simply inconsistent with the testimony of other witnesses. The prior incident of domestic violence was admissible to assist the jury to evaluate her credibility and explain the inconsistencies.

In addition, as the State points out, the evidence of the prior assault was also relevant to prove an essential element of the charged crime of kidnapping. To prove that Roberson was guilty of kidnapping, the State had to establish that he restricted Rodriguez's movements without her consent through the use of force or intimidation. See RCW 9A.40.030 (defining "kidnapping in the second degree"); RCW 9A.40.010(1) (defining "[a]bduct"); RCW 9A.40.010(6) (defining "[r]estrain"). As in State v. Ashley, 186 Wn.2d 32, 42-43, 375 P.3d 673 (2016), where the defendant was charged with unlawful imprisonment which also requires proof of restraint, the evidence of past violence was probative of

whether Rodriguez was restrained without her consent by intimidation at Roberson's house where it appeared that she was physically capable of opening the bedroom door from the inside. While this was not the basis for the trial court's admission of the evidence, we may affirm the court's decision as to the admissibility of evidence on any basis supported by the record. State v. Norlin, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998). In sum, the trial court did not abuse its discretion in admitting evidence about the prior domestic violence incident.

III. Public Trial

Roberson alleges a public trial violation based on three sidebar conferences that took place during trial.

During the January 2009 pretrial proceedings, the trial court apprised the parties of its practice for handling sidebar conferences during a jury trial:

> Again, you may recall we use sidebar conferences as needed. If any questions come up during jury selection or during the trial itself, we'll simply have a sidebar if you request it. And, again, keep in mind that if you want to put any sidebar on the record, you'll need to make that request. I'll give you the chance to do that at the next available recess, but I do not automatically put all sidebars on the record simply because most of them are simply procedural issues that don't need to be put on the record.[7]

During jury selection, the court explained to the jurors that if matters arose during trial that required discussion outside of their presence, the court would conduct a sidebar conference, meaning that the judge and the attorneys "go back behind this door, close the door, briefly discuss what needs to be discussed, and we'll come back out."[8]

---

[7] 1 RP at 25.
[8] 1 RP at 36.

Three conferences took place in this manner during the trial. The first occurred during a deputy's testimony about the bloody towel that Rodriguez held in the car that he later collected as evidence. After it became clear that the State intended to offer the towel as an exhibit, the court requested a sidebar. The sidebar lasted less than a minute. Approximately 30 minutes later, after the jury was excused and before the court adjourned for the day, the court memorialized the sidebar. The court stated that in response to the court's concern about the towel presenting risk to the jury as a biohazard, the State agreed to withdraw the exhibit and rely instead on photographic evidence.

The second sidebar occurred at the request of defense counsel during Rodriguez's testimony about the May 2008 incident. It is not clear from the record how long the sidebar lasted, but 20 minutes later, at the next court recess, defense counsel put the substance of the sidebar discussion on the record. Counsel stated that he objected to the Rodriguez's testimony about the details of the prior incident. The court ruled that the details of the incident were relevant and admissible within the scope of the court's earlier pretrial ruling.

The final sidebar took place during the testimony of a defense investigator. Defense counsel sought to admit evidence of photographs the investigator took of the bedroom door in Roberson's house sometime after the incident. The court sustained the State's objection to the photographs due to a lack of foundation. After defense counsel asked another question in an attempt to lay a foundation, the court requested a sidebar. After a sidebar that lasted less than a minute,

defense counsel turned to a different topic. This final sidebar was not memorialized on the record.

Criminal defendants have a right to a public trial under both the United States Constitution and the Washington State Constitution. State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Whether a defendant's public trial right has been violated is a question of law reviewed de novo. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

To answer that question, the court engages in a three-part inquiry: "(1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) if so, was the closure justified?" State v. Smith, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014). If the court concludes that the right to a public trial does not apply to the proceeding at issue, it need not reach the second and third steps in the analysis. Smith, 181 Wn.2d at 521.

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). To determine whether the public trial right attaches, we apply the "experience and logic" test. Sublett, 176 Wn.2d at 73. Under the experience prong, we consider whether the proceeding at issue has historically been open to the public. Sublett, 176 Wn.2d at 73. Under the logic prong, we ask "whether public access plays a significant positive role in the functioning of the particular process in question." Sublett, 176 Wn.2d at 73 (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, 106

S. Ct. 2735, 92 L. Ed 2d 1 (1986)). If both prongs are satisfied, the public trial right attaches. Sublett, 176 Wn.2d at 73.

In Smith, a case decided more than five years after the trial occurred in this case, the defendant argued that multiple sidebar discussions following evidentiary objections during trial violated his right to a public trial. Our Supreme Court held, based on the experience and logic test, that "reasonable and traditional sidebars used to avoid interruption of a trial do not implicate the public trial right." Smith, 181 Wn.2d at 521. As to the experience prong, the court noted that sidebar conferences have historically occurred outside the view of the public, because of the practical difficulties involved with interrupting trial to send the jury to the jury room every time an evidentiary objection arose. Smith, 181 Wn.2d at 515. As to the logic prong, the court concluded that evidentiary rulings during traditional sidebars "do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." Smith, 181 Wn.2d at 518. In a footnote, the court emphasized:

> We caution that merely characterizing something as a "sidebar" does not make it so. To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record.

Smith, 181 Wn.2d at 516 n.10. The court also observed, "Critically, the sidebars here were contemporaneously memorialized and recorded, thus negating any concern about secrecy." Smith, 181 Wn.2d at 518.

Acknowledging that traditional sidebar conferences do not implicate public trial rights under Smith, Roberson contends that the conferences that took place

during his trial do not fall within the definition of traditional sidebars. He points out that the record does not indicate why the sidebar conferences took place outside the courtroom, and not at the bench. He also points out that the sidebars were not recorded or contemporaneously memorialized.

Roberson claims that the conferences here are analogous to the in-chambers conference that took place in State v. Whitlock, 195 Wn. App. 745, 381 P.3d 1250 (2016).[9] In Whitlock, a bench trial, one of the defendants attempted to cross-examine a State witness about whether she had previously acted as a confidential informant. The State objected and requested a side bar. The court then called counsel into chambers to discuss the objection, outside of the presence of the defendants and without a court reporter. The conference lasted for 10 minutes. At the end of the testimony later that morning, the court and counsel described the content of the in-chambers discussion on the record. Our Supreme Court held that the conference was not a proper sidebar and violated the right of the defendants to a public and open trial. State v. Whitlock, 188 Wn.2d 511, 522-23, 396 P.3d 310 (2017).

But Whitlock was not a jury trial, so there was "no expediency justification for holding an evidentiary conference outside the courtroom," and "no reason for any delay in memorialization at all." 195 Wn. App. at 753; Whitlock, 188 Wn.2d at 523. This distinction is critical. Here, the context clearly indicates that the trial court used sidebars in order to avoid disrupting the flow of the jury trial. Although there is no information in the record about the layout of the courtroom to explain

_____

[9] Roberson relies on the decision of Division Two of this court in Whitlock. After Roberson filed his brief in this matter, the Supreme Court issued a decision affirming the Court of Appeals decision. State v. Whitlock, 188 Wn.2d 511, 396 P.3d 310 (2017).

why the court did not hold sidebars at the bench, given the brevity and context of the conferences, we cannot see how this alters the analysis.

A key reason why the in-chambers conference in Whitlock was not a sidebar was because the court concluded that the conference did not involve a traditional subject area of sidebars, such as "legal challenges and evidentiary rulings," but instead concerned a "factual" issue that was "easily accessible to the public." Whitlock, 188 Wn.2d at 522-23. Here, on the other hand, the first sidebar involved court procedure with regard to evidence presenting potential biohazard risk. The second involved an objection to testimony and the scope of the trial court's prior pretrial ruling, a ruling the court previously made in open court. And while the final sidebar was not memorialized, it is apparent from the record that the purpose was to address the State's evidentiary objection.

Parties to an unrecorded sidebar are obligated to ensure that a record of the ruling is made for appeal purposes and failure to make a record may preclude review. State v. Koloske, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), overruled on other grounds by State v. Brown, 111 Wn.2d 124, 761 P.2d 588 (1988). But the final sidebar only lasted approximately 45 seconds, including the time it took for the court and counsel to exit and reenter the courtroom. Given the brevity, context, and apparent purpose, the record raises no concerns that the sidebars jeopardized the fairness of the trial or the appearance of fairness essential to public confidence in the system. The conferences were sidebars as defined by Smith and did not violate Roberson's right to a public trial.

17

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, J._                    _Becker, J._